557 P.2d 626

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Michael Floyd COLYER, Defendant-Appellant.**

**No. 12115.**

Supreme Court of Idaho.

Dec. 14, 1976.

C. Robert Yost, Nampa, for defendant-appellant.

Wayne L. Kidwell, Atty. Gen., Guy G. Hurlbutt, Asst. Atty. Gen., Lynn E. Thomas, Deputy Atty. Gen., Boise, for plaintiff-respondent.

DONALDSON, Justice.

On appeal from a conviction for assault with intent to commit murder, the defendant-appellant Michael Colyer seeks to have his judgment of conviction set aside on the ground that the trial court failed to comply with *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed. 2d 274 (1969), when accepting his plea of guilty. Because the record does not adequately show that appellant understood the consequences of a plea of guilty, we reverse the judgment of conviction.

Before accepting appellant's plea of guilty, the trial court did not inform him of his right against self-incrimination and of the possible consequences of a guilty plea. Relying upon *Boykin v. Alabama, supra,* appellant contends that this omission renders the plea fatally defective.[1]

In *Boykin* the defendant had pleaded guilty to five counts of common-law robbery, a capital offense. So far as the record showed, the trial court asked no questions of the defendant concerning his plea, and the defendant did not address the court. In holding that the defendant had been denied due process of law, the Supreme Court stated:

"Several federal constitutional rights are involved in a waiver that takes place

---

1. Appellant also assigns as error the failure of the trial court to inform him that he is presumed innocent until proven guilty beyond a reasonable doubt and ,that there are several possible defenses to the crime charged, such as insanity.

"This Court is, however, aware of no precedent, from the Supreme Court or elsewhere, for the proposition that due process requires that a defendant be informed of each and every right which is waived by a guilty plea * * *. Carrying [appellant's] argument to its logical conclusion, the court, before accepting a guilty plea, would be required to inform a defendant of his right to a speedy and public trial, his right to an impartial jury, his right to compulsory process for obtaining witnesses, his right to be free from cruel and unusual punishment, his right to be free from unreasonable searches and seizures, his right to have excluded from the trial any evidence illegally seized, and many more. We ˙do not * * * feel that due process requires this." *McChesney v. Henderson,* 482 F.2d 1101, 1110 (5th Cir. 1973), *cert. denied* 414 U.S. 1146, 94 S.Ct. 901, 39 L.Ed.2d 102 (1974).

when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination * * *. Second, is the right to trial by jury. Third, is the right to confront one's accusers. We cannot presume a waiver of these three important federal rights from a silent record.

"What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence. When the judge discharges that function, he leaves a record adequate for any review that may be later sought, and forestalls the spin-off of collateral proceedings that seek to probe murky memories." 395 U.S. at 243–44, 89 S.Ct. at 1712 (citations and footnotes omitted).

The quoted language, while not establishing precise guidelines, makes clear that a plea of guilty cannot stand unless the record in some manner indicates that it was voluntarily and understandingly entered. ■ ■ Whether a plea is voluntary and understood entails inquiry into three areas: (1) whether the defendant's plea was voluntary in the sense that he understood the nature of the charges and was not coerced; (2) whether the defendant knowingly and intelligently waived his rights to a jury trial, to confront his accusers, and to refrain from incriminating himself; and (3) whether the defendant understood the consequences of pleading guilty. It is clear that the voluntariness of a guilty plea can be determined by considering all of the relevant surrounding circumstances contained in the record. *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *Schneckloth v. Bustamonte,* 412 U.S. 218, 238 n. 25, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The troublesome question is the type of record necessary to show the defendant waived the three above-enumerated

rights and understood the consequences of pleading guilty.

As we have already pointed out, *Boykin* was decided in the context of a totally silent record. The Supreme Court did not expressly rule upon anything but the sufficiency of a barren record. Some courts, led by the California Supreme Court in *In re Tahl,* 1 Cal.3d 122, 81 Cal.Rptr. 577, 460 P.2d 449 (1969), have concluded that *Boykin* requires a specific on-the-record waiver of each of the three constitutional rights. We are unable to accede to that interpretation.

■ We believe that *Boykin* only requires that the record affirmatively show that the plea was understood and voluntary. Although the record must show that the defendant waived his constitutional rights and understood the consequences of pleading guilty, we think it is sufficient if such waiver or understanding can be fairly inferred from the record as a whole. We base our decision upon an examination of *Boykin* and cases decided shortly before and after it.

Before discussing these cases, we should first clarify the issue to be decided. The *Tahl* interpretation of *Boykin* is essentially the procedure required by Rule 11 of the Federal Rules of Criminal Procedure. *Compare McCarthy v. United States,* 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), *with In re Tahl, supra.* The issue, therefore, is whether the procedure required by Rule 11 is also required by the United States Constitution.

In the first case, *McCarthy v. United States, supra,* the Supreme Court held that noncompliance with Rule 11 requires that the guilty plea be set aside. It expressly based its decision upon its supervisory power over the courts rather than upon constitutional grounds. One month later in *Halliday v. United States,* 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969), the Supreme Court held that *McCarthy* was not to be applied retroactively. The basis of its holding was that a constitutionally-valid conviction could be obtained without full

compliance with Rule 11. *Boykin* was decided one month after *Halliday*. We think it unlikely that during this short period of time the Court reversed itself and decided that Rule 11 procedure was constitutionally mandated.

As we previously mentioned, the Supreme Court in *Boykin* did not establish any precise guidelines as to the type of record required. It simply stated, "We cannot presume a waiver of these three important federal rights from a silent record." 395 U.S. at 243, 89 S.Ct. at 1712. In a footnote to the above statement, however, the Court said, "In the federal regime we have Rule 11 * * * which governs the duty of the trial judge before accepting a guilty plea." *Id.* at 243 n. 5, 89 S.Ct. at 1712. This statement strongly indicates that the Court viewed the procedural requirements applicable "in the federal regime" as differing from those imposed upon the states by the United States Constitution.

Of the cases decided after *Boykin,* we think that *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), merits our particular attention.[2] In *Alford* the Supreme Court stated:

"At the state court hearing on post-conviction relief, the testimony confirmed that Alford had been fully informed by his attorney as to his rights on a plea of not guilty and as to the consequences of a plea of guilty. Since the record in this case affirmatively indicates that Alford was aware of the con-

sequences of his plea of guilty and of the rights waived by the plea, no issues of substance under *Boykin v. Alabama* would be presented * * *." 400 U.S. at 29 n.3, 91 S.Ct. at 163 (citation omitted).

The post-conviction hearing in *Alford* was held over one year after the accused pleaded guilty. We see little difference in procedural protection between allowing the state to make its record at a post-conviction hearing and permitting reasonable inferences to be drawn from a record made when the plea was entered. If the former satisfies *Boykin,* then so must the latter.[3]

From the above we conclude that *Boykin* does not stand for the proposition that the due process clause requires state trial courts to enumerate specifically certain rights, or to go through any particular litany, before accepting a defendant's guilty plea. Rather, we think that *Boykin* merely requires that the record, including reasonable inferences drawn therefrom, must affirmatively show that the plea was voluntary, that the defendant waived the three constitutional rights, and that he understood the consequences of pleading guilty. We find support for our interpretation from the fact that the federal courts of appeals which have decided this issue have reached the same conclusion. *Fontaine v. United States,* 526 F.2d 514 (6th Cir. 1975), *cert. denied,* 424 U.S. 973, 96 S.Ct. 1476, 47 L.Ed.2d 743 (1976); *Wilkins v. Erickson,* 505 F.2d 761 (9th Cir. 1974); *Todd v. Lockhart,* 490 F.2d 626

---

2. In another post-*Boykin* case, *Brady v. United States,* 397 U.S. 742, 747 n. 4, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747 (1970), the Court stated:
"The requirement that a plea of guilty must be intelligent and voluntary to be valid has long been recognized. The new element added in *Boykin* was the requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly involuntarily." (Citations omitted).
Several courts have found the above statement to be persuasive evidence that the *Tahl* interpretation of *Boykin* is incorrect.

*See, e. g., Stinson v. Turner,* 473 F.2d 913 (10th Cir. 1973); *Barrett v. State,* 544 P.2d 830 (Alaska 1975), *aff'd on rehearing,* 546 P.2d 161 (Alaska 1976).

3. In *McCarthy* the Court was faced with determining the effect of noncompliance with Rule 11. The alternatives considered were either setting aside the guilty plea or conducting a post-conviction hearing to determine whether the plea was voluntary. The Court rejected the latter alernative as an inadequate substitute for full compliance with Rule 11.

**36**

(8th Cir. 1974); *Stinson v. Turner*, 473 F. 2d 913 (10th Cir. 1973); *Wade v. Coiner*, 468 F.2d 1059 (4th Cir. 1972); *United States v. Frontero*, 452 F.2d 406 (5th Cir. 1971).

Turning to the present case, the record shows that the trial court did not advise appellant either of his right against self-incrimination or of the possible consequences of a guilty plea before accepting his plea. Since we conclude that the record does not indicate that appellant understood the possible consequences of his plea, we find it unnecessary to decide whether we can infer a waiver of his right against self-incrimination.

■■ The record shows that the trial court asked appellant if he understood the consequences of entering a plea of guilty, to which appellant replied in the affirmative. There is nothing in the record, however, to indicate what appellant understood those consequences to be. At a minimum the record must show that appellant realized the possible maximum penalty which could be imposed. We cannot presume that he possessed such knowledge. This is amply demonstrated by the fact that at the time sentence was imposed both the prosecuting attorney and appellant's counsel were mistaken as to the maximum sentence.[4] Appellant's guilty plea must therefore be set aside, and he must be allowed to plead anew.

■■ Beyond the minimum inquiry required by the United States Constitution, we encourage trial judges to engage defendants seeking to plead guilty in a dialogue as detailed as time, resources, and circumstances permit. To forestall subsequent attack on the guilty plea, the trial court should specifically inform the defendant that by pleading guilty he waives his right to a jury trial, he waives his right to confront witnesses, he waives his right against self-incrimination, and he waives any defenses he may have to the charges.[5]

■ The court should also examine the defendant to ensure that the plea is voluntary and that the defendant understands the nature of the charges. The defendant should be informed of the possible consequences of pleading guilty including the maximum sentence and other direct consequences which may apply, such as the persistent violator statute. In addition to asking the defendant whether the plea is the result of any plea-bargaining agreement, the court should inform him that the court is not bound by any recommendation from the prosecutor as to the sentence to impose. By conducting this type of thorough inquiry on the record, the trial court can insulate the guilty plea as much as possible from collateral attack.

Appellant also contends that it was error not to give him a psychological examination, that the presentence report was inadequate, and that the sentence imposed was excessive. Since we have reversed appellant's conviction, we find it unnecessary to decide these issues. Subsequent to the sentencing in this case, I.C.R. 37, which governs presentence investigations and reports, became effective. We presume that if on remand appellant is convicted and a presentence report is ordered, the presentence

---

4. The maximum sentence which could be imposed is fourteen years. I.C. § 18–4015. The prosecuting attorney thought that the maximum was ten years, and appellant's attorney thought that it was fifteen. There is nothing in the record to indicate that, before appellant pleaded guilty, his attorney informed him of what the attorney believed the maximum sentence to be. Appellant is not represented on appeal by the same counsel who represented him during the proceedings below.

5. A defendant does not waive all possible defenses by pleading guilty. *See, e. g., Clark v. State*, 92 Idaho 827, 452 P.2d 54 (1969) (jurisdictional defects not waived). It is unnecessary, however, for the trial court to enumerate each defense which is or is not waived. For the sake of expediency, it is sufficient if the trial court informs the accused that by pleading guilty he waives any defenses he may have to the offense charged.

investigator will prepare a report which complies with I.C.R. 37.

The judgment of conviction is reversed, and the case is remanded to the district court with directions to allow the defendant to plead anew to the offense charged.

McFADDEN, C. J., and SHEPARD, BAKES and BISTLINE, JJ., concur.