647 P.2d 796

**Ardell K. SCHMIDT,
Applicant-Appellant,**

v.

**STATE of Idaho, Respondent.**

No. 13795.

Court of Appeals of Idaho.

June 29, 1982.

Petition for Review Denied
Oct. 1, 1982.

David H. Leroy, Atty. Gen., Lynn E. Thomas, Sol. Gen., Timothy Walton, Deputy Atty. Gen., on brief, and Myrna A. I. Stahman, Deputy Atty. Gen., on oral argument, Boise, for respondent.

WALTERS, Chief Judge.

*I. Facts and Procedure.*

This is an appeal from an order of the district court granting summary disposition of an application for post-conviction relief. The applicant, Ardell K. Schmidt, was charged with the unlawful delivery of a controlled substance. He was found to be an indigent person, an attorney was appointed to represent him, and he entered a plea of not guilty. The day before his trial Schmidt changed his plea to guilty. Thereafter the trial court sentenced him to the custody of the Board of Correction for an indeterminate period not to exceed fifteen years. The trial court retained jurisdiction for the first one hundred-twenty days pursuant to I.C. § 19–2601.

While in the custody of the Board, Schmidt was sent to the North Idaho Correctional Institution located at Cottonwood, Idaho. Near the expiration of the period of retained jurisdiction, Schmidt appeared before the Board's central classification committee. Following the classification hearing, the committee recommended that the trial court relinquish jurisdiction over Schmidt. The trial court reviewed the committee's recommendations and terminated jurisdiction, ordering that the remainder of the sentence be served.

Schmidt then filed an application for post-conviction relief before the district court. Schmidt alleged that he had been denied due process of law in the proceeding before the classification committee at Cottonwood. The district court gave notice of intent to dismiss the application, ruling that the procedure followed by the committee conformed with the requirements of *State v. Wolfe,* 99 Idaho 382, 582 P.2d 728 (1978). Pursuant to Idaho Code § 19–4906(b), Schmidt was given twenty days within which to respond to the court's proposed

Charles F. Bean, Coeur d'Alene, for applicant-appellant.

dismissal of the application. Schmidt then timely filed a motion for leave of court to supplement his application for post-conviction relief. Thereafter, and following a series of motions and orders relating to the appointment of counsel, discovery, and similar matters, Schmidt filed an amended application for post-conviction relief.

Both Schmidt and the state then filed motions for summary disposition pursuant to I.C. § 19–4906(c). These motions represented that no genuine issues of material fact existed in respect to the amended application, and that each moving party was entitled to judgment on the application as a matter of law. Following argument and receipt of briefs, the district court entered an order granting the state's motion and dismissed the amended application. Schmidt appeals. We affirm the order of the district court.

## II. Issues on Appeal.

On appeal, Schmidt contends that the district court erred in making seven rulings in the order granting summary disposition. These rulings are as follows: (a) that the general nature of the crime was explained to Schmidt prior to acceptance of his plea of guilty; (b) that the trial court had no duty to explain the specific elements of the crime with which Schmidt was charged, prior to accepting his plea of guilty; (c) that the trial court had no obligation to ascertain whether there was a sufficient factual basis for the charge, prior to accepting Schmidt's plea of guilty; (d) that a letter from Schmidt's brother-in-law to the prosecutor was not material to the charge of delivery of a controlled substance, and was thus not discoverable by Schmidt; (e) that Schmidt was not denied the right of appeal due to inadequate counsel; (f) that Schmidt was not entitled to the assistance of legal counsel in respect to the classification hearing held at the Cottonwood facility; and (g) that a trial court may terminate its jurisdiction over a defendant without first holding an evidentiary hearing.

## III. Voluntariness and Understanding of the Plea.

■ The first two issues on appeal concern the acceptance of Schmidt's plea of guilty. Schmidt argues that the district court erred in ruling that the nature of the crime was explained to Schmidt prior to acceptance of his plea of guilty, and that the court also erred in ruling that the trial court had no duty to explain to him the elements of the crime charged, prior to accepting his plea of guilty. These issues relate to the voluntariness and understanding requirements of his plea.

Schmidt argues that his plea of guilty was not voluntarily entered because neither the nature of the crime nor the elements thereof were explained to him prior to acceptance of his plea. In this regard, Schmidt cites the cases of *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969) and *Henderson v. Morgan*, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976).

*McCarthy* focused on the procedure that must be followed under Rule 11 of the Federal Rules of Criminal Procedure, before a United States district court may accept a guilty plea. By its own terms that decision was rendered pursuant to the supervisory power of the United States Supreme Court over the federal courts in the administration of criminal law, and because of an apparent conflict between the federal courts of appeal over the effect of the failure of federal district judges to follow the provisions of Federal Rule 11. The Idaho Supreme Court has recognized that the court in *McCarthy* "expressly based its decision upon its supervisory power over the courts rather than upon constitutional grounds." *State v. Colyer*, 98 Idaho 32, 34, 557 P.2d 626, 628 (1976). It has also been noted that "Rule 11, Fed.R.Crim.P., of course, does not apply to a plea of guilty in state courts." *Wilkins v. Erickson*, 505 F.2d 761, 765 (9th Cir. 1974). Because of its uniqueness as a federal procedural decision under a specific rule of practice in the federal courts, we deem *McCarthy* to be inapplicable to Schmidt's case.

Schmidt properly cites *Henderson, supra,* for the proposition that when pleading guilty a defendant must be informed of the nature and elements of the crime charged; otherwise his plea of guilty may be deemed involuntary either because he did not understand the nature of the constitutional protections which he waives by pleading guilty, or because he had such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt. In *Henderson,* the defendant was charged with first degree murder but pled to second degree murder through a plea bargain. At the time of the plea, no discussion of the elements of second degree murder were had with the court; specifically, there was no reference to the requisite intent to cause the death of the victim, an element of second degree murder. On appeal, the United States Supreme Court noted that the charge of second degree murder was never formally made. The Court observed that had it been so made, it necessarily would have included the charge that the offense was committed with a design to effect the death of the victim. The Court held that lack of a formal charge resulted in failure to inform the defendant of the necessary elements of the crime and prevented his plea of guilty from being voluntary in the constitutional sense.

*Henderson* also held the guilty plea could not be voluntary in the sense that it constituted an intelligent admission by the defendant to the offense, unless he received real notice of the true nature of the charge against him. The Court noted further that ordinarily the record of the proceedings contains either an explanation of the charge by the trial judge or at least a representation by defense counsel that the nature of the offense has been explained to the accused. The Court in *Henderson* concluded that because the defendant did not receive adequate notice of the offense to which he pled guilty, his plea was involuntary; and therefore its acceptance was inconsistent with the defendant's rights of due process of law.

Schmidt's situation differs greatly from *Henderson.* When Schmidt appeared before the trial court to withdraw his plea of not guilty and to interpose a plea of guilty to the charge of unlawful delivery of a controlled substance, the judge had the clerk read the information to Schmidt in open court, before proceeding further. Then, before allowing Schmidt to plead guilty to the offense, the judge advised him in a lengthy colloquy. The judge reminded him of the various pleas that could be entered, and that upon a plea of not guilty, a jury trial would be held and the state would be required to prove guilt beyond a reasonable doubt. The judge discussed the presumption of innocence; the right of confrontation; the right to subpoena witnesses; and the right against self-incrimination. The judge explained that a plea of guilty would waive the right to trial by jury as well as the other rights outlined to him. The judge advised that a plea of guilty would admit the truth of all of the essential elements of the charge as filed in the information, including the issue of intent, and that a plea of guilty would be an admission of all facts stated in the information. The judge specifically noted that a plea of guilty would admit guilt of the crime of delivery of a controlled substance. Finally, the judge advised Schmidt of the maximum penalty that could be imposed for the crime either under a plea of guilty or upon conviction following a plea of not guilty.

In addition to the foregoing, the judge further determined the voluntariness of Schmidt's plea by inquiring as to whether Schmidt was under the influence of any alcohol or other narcotic or non-narcotics of any kind; whether Schmidt had any thoughts that he was not mentally competent to enter a plea; whether he was entering his plea under any compulsion, promises of leniency or reward, or threats; and if there was any other reason, whether asked by the court or not, why his plea would not be voluntary.

In regard to Schmidt's plea, the decision in *State v. Colyer,* 98 Idaho 32, 557 P.2d 626 (1976) is pertinent. There, our Supreme Court held that the question whether a plea is voluntary and understood by a defendant

344

in Idaho entails inquiry into whether the defendant understands the nature of the charges and is not coerced in entering his plea. It also entails inquiry into whether the defendant knowingly and intelligently waives his right to a jury trial, to confront his accusers, and to refrain from incriminating himself. Lastly, it entails inquiry into whether the defendant understands the consequences of pleading guilty: at a minimum, the record must show that the defendant realized the possible maximum penalty which could be imposed.[1] Our Supreme Court encouraged trial judges to engage defendants seeking to plead guilty in as thorough and detailed a dialogue as time, resources and circumstances permit, in order to forestall subsequent collateral attack on the guilty plea. *Id.* at 36, 557 P.2d at 630.

After *Colyer,* the Idaho court decided *State v. Bradley,* 98 Idaho 918, 575 P.2d 1306 (1978). There the court addressed the issue of whether the trial court erred in accepting a plea of guilty to the crime of second degree murder without explaining to the defendant the element of intent. The court held that the requisites laid down in *State v. Colyer* were met in Bradley's case. The court noted that the information was read to Bradley, which referred to the necessary element of intent. The court also noted that the element of intent was discussed in the presence of Bradley.

In the subsequent case of *Sparrow v. State,* 102 Idaho 60, 625 P.2d 414 (1981), the court also discussed the adequacy of informing a defendant of the intent element of the crime. There the court said:

In order for a guilty plea to be voluntary, a defendant must be informed of the intent elements requisite to the charged offense. *Henderson v. Morgan,* 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976); *State v. Bradley,* 98 Idaho 918, 575 P.2d 1306 (1978). In *State v. Bradley, supra,* we held that this requirement was

satisfied where the information containing a reference to the necessary element of intent was read to the defendant, and there was no showing that the defendant was not conversant with the English language or that he lacked normal intelligence and education.

102 Idaho at 61, 625 P.2d at 415.

Here, we have almost the same situation as occurred in *Bradley* and *Sparrow.* The information was read to Schmidt in open court. In accepting his plea, the court advised him that the plea of guilty would admit the truth of all essential elements of the charge as recited in the information, including admission of the issue of intent. There is no showing that Schmidt was not conversant with the English language, or lacked normal intelligence or education.

In our view the procedure and colloquy engaged in by the trial court with Schmidt comport with the requirements of *Henderson* and *Colyer.* We therefore hold that the district court did not err in its determination that Schmidt was informed of the nature of the offense. Although the district court held that explanation of the elements of the offense was not required, we hold that, under the authorities cited, Schmidt was informed and advised of the elements of the crime as alleged in the information.

*IV. Factual Basis for the Plea.*

The next issue raised by Schmidt concerns the finding of the court below that the trial court had no obligation to ascertain whether there was a sufficient factual basis for the charge, prior to accepting Schmidt's plea of guilty. Schmidt argues that a defendant must be given the facts and opportunity necessary to make an intelligent plea decision, in order for his plea to be voluntarily and understandingly made.

The record here shows that Schmidt was apprised by the court that a plea of guilty would be an admission of all facts relevant

---

1. The court in *Colyer* also held that the failure of the trial court to inform the defendant that he was presumed innocent until proven guilty beyond a reasonable doubt, and that there may be several defenses to the crime charged—such

as insanity—did not result in denial to the defendant of his constitutional rights. *State v. Colyer,* 98 Idaho at 33 n. 1, 557 P.2d at 627. *Accord, State v. Thacker,* 98 Idaho 369, 370, 564 P.2d 1278, 1279 (1977).

to the matter which were contained in the information filed against him. We are cited to no authority, nor does our research disclose a requirement, to the effect that in *all* cases the court must establish a sufficient factual basis prior to accepting a plea of guilty in Idaho.

We are aware of the standard of the American Bar Association, PLEAS OF GUILTY, § 1.6 (1968), which recommends that the court should not enter a judgment upon acceptance of a plea of guilty without making such inquiry as may satisfy the court that there is a factual basis for the plea. In this regard, Criminal Justice Standards Bench Book for Special Court Judges, 15 nn. 2, 3 (2d ed. April, 1976), explains as follows:

"[t]he purpose of placing the factual basis motivating the guilty plea on the record serves multiple purposes; (1) it aids the Court in insuring that the defendant is pleading to a charge which could actually have been proven if a trial had been held; (2) it aids the defendant in fully understanding the charge against him; (3) this inquiry provides a more accurate record of the conviction process which minimizes the chances of a defendant successfully challenging his conviction later. . . .

\*   \*   \*   \*   \*   \*

The Court should ascertain that the facts recited support the crime charged, since the defendant has a right to be convicted only of the crime he committed and to which he is pleading guilty. This right arises from the double jeopardy provisions contained in both Federal and State constitutions."

We note also the ABA Standards, The Function of the Trial Judge, § 4.2 (1972), specifies matters which should be covered by a trial judge when accepting pleas of guilty, including an inquiry that there is a factual basis for the plea. Section 4.2, *supra*, appears to have been adopted in part by our Supreme Court in Rule 11(c) of the Idaho Criminal Rules. Rule 11(c) covers basically the same information required in the ABA Standard, § 4.2; however, the rule does not include the require-

ment that the trial court make an inquiry regarding the factual basis for the plea. This indicates to us that the Supreme Court of Idaho has determined that, as a general rule, there is no requirement of inquiry as to the factual basis for a plea.

Several exceptions to this general rule have developed in cases where a defendant seeks to have his plea accepted by the court, but (a) does not recall the facts of the incident which resulted in the offense charged, or (b) is unwilling or unable to admit his participation in the acts constituting the crime, or (c) couples his plea with continued assertion of innocence. *See North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); *State v. Sparrow, supra; State v. Martinez*, 89 Idaho 129, 403 P.2d 597 (1965). Here, Schmidt does not contend, nor show, that he falls within any of these exceptions. We hold that, unless a case falls within one of these exceptions, a court presented with a plea of guilty need not inquire into the underlying factual basis before accepting the plea. Of course, this holding does not diminish a court's obligation to conduct such an inquiry if—after a plea is entered but before sentence is imposed—the court receives information raising an obvious doubt as to whether the defendant is in fact guilty. In such circumstances, the trial court should inquire into the factual basis of the plea, either to dispel the doubt or to allow the defendant to plead anew.

The procedure followed in Schmidt's case was consistent with the foregoing. At the conclusion of the proceedings when Schmidt pled guilty, the judge directed the clerk to record the plea. The matter was then continued for sentencing, pending preparation and submission of a pre-sentence report.

At the sentencing hearing, in the course of making a recommendation to the court for disposition of Schmidt's case, the prosecutor orally advised the court—in the presence of Schmidt and his counsel—of Schmidt's involvement in the delivery of the controlled substance. Schmidt did not

346

dispute the prosecutor's statements. In fact, Schmidt's counsel acknowledged to the court that Schmidt "was more or less of a go-between during the actual drug buying process." At the conclusion of that hearing the court entered judgment and sentenced Schmidt. Schmidt's plea and the prosecutor's outline of the factual basis for the charge were thus both presented to the court, before the plea was finally accepted, when the court adjudicated Schmidt guilty of the crime.

We find no reversible error in the determination of the court below that Schmidt was not entitled to post-conviction relief on the issue regarding the existence of a factual basis for his plea.

### V. Disclosure of Evidence.

Schmidt's next argument concerns the existence of a letter received by the prosecutor, which was not disclosed to Schmidt until after he had pled guilty. During the sentencing hearing the prosecutor, in the course of making his recommendation to the court on the sentencing, mentioned he had received a letter from Schmidt's brother-in-law. The prosecutor disclosed that he had forwarded the letter to the federal drug enforcement administration. Although Schmidt had requested information in the possession of the state pursuant to a motion for discovery filed with the court prior to the entry of his guilty plea and while still preparing for trial, the existence or contents of this letter was not disclosed by the prosecution.

In Schmidt's application for post-conviction review, he represented that he had reason to believe the letter contained information which, if revealed to the court, would show he was innocent. He contended the prosecution had an absolute obligation to reveal the contents of the letter, but wrongfully failed to do so. Schmidt represented that, since the filing of the application for post-conviction relief, he had made diligent efforts to obtain a copy of the letter from the state. His attempts were unsuccessful because the prosecution no longer had possession of the letter and could not obtain it from the drug enforcement agency. He argued that the prosecution's failure to produce the document was an arbitrary act which deprived him of his liberty without due process of law.

In the post-conviction proceeding, the state acknowledged that the letter had been received and that its existence was not disclosed until the sentencing hearing. It was admitted the letter could no longer be found. The deputy prosecuting attorney filed an affidavit stating he recalled receiving the letter but could no longer recollect its specific contents. He stated he did recall, however, that the letter did not contain exculpatory evidence nor any information material to the preparation of either the prosecution's case or the defendant's case.

Schmidt relies upon the case of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), for the proposition that suppression by the prosecution of evidence favorable to an accused violates due process, where disclosure of the evidence has been requested and the evidence is material either to guilt or to punishment—irrespective of the good faith or bad faith of the prosecution. *See also State v. Harwood,* 94 Idaho 615, 495 P.2d 160 (1972); I.C.R. 16.

We will first discuss the effect of the failure of the state to disclose evidence which may be material to the determination of guilt, in the case where the defendant waives his right to trial by pleading guilty. The Idaho court has recognized the following:

A plea of guilty has the same force and effect as a judgment rendered after a full trial on the merits. [Citations omitted.] By pleading guilty the appellant waived all defenses which might have been raised other than the defense that the information failed to state a public offense or the defense that the court did not have jurisdiction. [Citations omitted.]

*Lockard v. State,* 92 Idaho 813, 818, 451 P.2d 1014, 1019 (1969). The court has also stated,

[a] valid plea of guilty, voluntarily and understandingly given, waives all non-jurisdictional defects and defenses,

whether constitutional or statutory, in prior proceedings. [Citations omitted.] A valid guilty plea is a judicial admission of all facts charged by the indictment or information. [Citations omitted.] A valid plea of guilty is conclusive as to guilt. [Citations omitted.] It is a waiver of trial, [Citations omitted.] and obviates the necessity of the prosecution coming forward with evidence. [Citations omitted.] A conviction had on a valid plea of guilty is not subject to collateral attack on the ground that as a factual matter the accused was not guilty of the offense charged. [Citations omitted.]

*Clark v. State*, 92 Idaho 827, 832–33, 452 P.2d 54, 59–61 (1969); *see also Still v. State*, 97 Idaho 375, 377, 544 P.2d 1145, 1147 (1976).

We hold that Schmidt, having waived his right to jury trial, also waived his right to disclosure of evidence by the prosecutor. The failure on the part of the prosecutor to disclose the evidence was not jurisdictional.

Under *Brady v. Maryland, supra,* the letter could possibly be relevant to the punishment meted out to Schmidt at the sentencing proceeding. However, his counsel[2] did not take any steps during the course of that proceeding to demand to see the contents of the letter. Schmidt's application for post-conviction review indicates that any further attempts to locate the letter or the writer thereof have been futile. This leaves us in the position of only speculating as to whether or not the letter would in fact have had any bearing upon the punishment in Schmidt's case. It was incumbent upon Schmidt to show the materiality of the contents of the letter to the sentence in his case. The materiality of the letter is highly questionable in light of the affidavit of the prosecuting attorney that to the best of his recollection the letter contained neither exculpatory nor inculpatory statements.

It is well established in Idaho that the trial court has broad discretion in determining what evidence is to be admitted at the sentencing hearing. *State v. Johnson*, 101 Idaho 581, 583, 618 P.2d 759, 761 (1980). Following reception of evidence regarding the possibility of punishment, the punishment or sentence to be imposed by the court is committed to the sound discretion of the court, subject to maximum penalties set forth in the statutes and subject to any required minimum period of incarceration. *See* I.C. § 19–2601; *State v. Wagenius*, 99 Idaho 273, 279, 581 P.2d 319, 325 (1978). Given the waiver of trial by Schmidt, through entry of a guilty plea, and the broad discretion allowed to the trial court in the reception of evidence regarding sentencing and determination of the appropriate sentence to be given, we agree with the ruling of the district court that Schmidt was not entitled to post-conviction relief because of nondisclosure of the letter sent by the brother-in-law to the prosecuting attorney.

## VI. Denial of Right to Appeal.

Schmidt next contends the district court erred in ruling he was not denied the right of appeal due to inadequate advice of counsel. Schmidt discloses he did not appeal his conviction because he was fearful that a new statute, I.C. § 19–2513A, pertaining to fixed sentences, would result in his being resentenced to a fixed term of incarceration upon remand following a successful appeal. A letter to that effect, from Schmidt to his counsel, was submitted as part of the post-conviction proceeding.[3] Schmidt argues that his attorney should have advised him the new statute was not in effect when Schmidt committed the crime and that the statute therefore would not apply to him. He concludes that he was denied the right to appeal because of the conduct of his counsel. We disagree.

**2.** Schmidt is represented on appeal by counsel other than the attorney who represented him at the sentencing proceedings.

**3.** That letter, as Schmidt wrote it, is as follows:

"I don't think I want to appeal my case. Because I am afraid that the judge will give me a fixed sentence. But, I would like a post-conviction. I think the sentence was to harsh. I shouldn't been given over 5 years."

The district court recognized that it was not clear whether resentencing of Schmidt under I.C. § 19–2513A would constitute an ex post facto application of the statute. *See Dobbert v. Florida*, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977); *Lindsey v. Washington*, 301 U.S. 397, 57 S.Ct. 797, 81 L.Ed. 1182 (1937). We deem it unnecessary to decide whether such an application would have been permissible. The fact that the statute arguably might be so applied indicates to us that Schmidt's reason for not appealing may have been soundly based. We cannot fault Schmidt's counsel for failing to give a definitive answer to Schmidt, even if one was required, where the issue was not free from doubt. While counsel is obligated to give a defendant his professional judgment as to whether meritorious grounds for appeal exist and as to the probable results of an appeal, the question whether an appeal should be taken is ultimately a matter for the defendant to decide. *United States v. Neff*, 525 F.2d 361 (8th Cir. 1975.) An appeal is a matter of choice, not of right, and "the determination of whether an appeal should be taken or not *rests solely with the accused* and is not to be decided by his attorney." *Gardner v. State*, 91 Idaho 909, 912, 435 P.2d 249, 252 (1967). (Emphasis original.)

The record here shows that Schmidt knew he could appeal his conviction, but chose not to, for his own reasons. We concur with the determination made by the district court that, under the circumstances, Schmidt's counsel was not ineffective merely because he failed to advise Schmidt that his reason for not appealing might have been unfounded.

## VII. Right to Counsel at the Classification Hearing.

Schmidt next contests the ruling of the district court that he was not entitled to the assistance of counsel in the classification proceeding held at the Cottonwood facility. The district court's determination was based upon *State v. Wolfe*, 99 Idaho 382, 582 P.2d 728 (1978). In *Wolfe*, our Supreme Court established certain procedural requirements which must be followed, to accord due process to a defendant during classification hearings, prior to rendering a report to the sentencing judge under the retained jurisdiction concept. It said:

> The prisoner must be given adequate notice before the hearing, including notice of the substance of all matters that will be considered. The prisoner must be given an opportunity to explain or rebut any testimony or recommendations. In addition, the prisoner must be free to call witnesses in his behalf from among the employees and other prisoners at [the facility where he is being held]. This information should be included in the report sent back to the sentencing judge.
>
> These minimal procedures will help ensure the report is as complete as possible and guarantee a basic fairness for both the prisoner and the sentencing judge . . . . (Emphasis supplied.)

99 Idaho at 389, 582 P.2d at 735.

Schmidt urges that an additional procedural requirement—that of assistance of counsel—should be adopted in regard to classification hearings during the retained one hundred-twenty days. For authority, he cites *Mempa v. Rhay*, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967). *Mempa* held that a probationer is entitled to be represented by counsel at a combined hearing where his probation is revoked *and he is sentenced*—the imposition of sentence having been deferred during the period of probation. The Court in *Mempa* adhered to the rule that a defendant is entitled to counsel at sentencing, *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), *and Townsend v. Burke*, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948), even when it is accomplished as a part of a subsequent probation revocation proceeding. *Mempa, supra*, 389 U.S. at 137, 88 S.Ct. at 258. Subsequently, in *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), the Court held that in probation revocation hearings following sentencing, the decision as to the need for counsel, to comport with due process requirements, must be made on a case-by-case basis in the exercise of a sound discretion

by the state authority charged with the responsibility for administering the probation and parole system. *Id.* at 790, 93 S.Ct. at 1763–1764.

■ From these cases, we conclude that a defendant is entitled to representation by counsel at sentencing, but not at probation revocation proceedings except when dictated by special circumstances, unless those proceedings are a combined sentencing and probation revocation proceeding.

■ Here Schmidt had been sentenced, while represented by counsel, before he was committed to the custody of the Board of Correction subject to the period of jurisdiction retained by the court. The appearance before the classification committee was neither a sentencing proceeding nor a probation revocation proceeding. It was an information gathering process, including study and evaluation of Schmidt, for compilation of a recommendatory report to the trial court. *State v. Wolfe*, 99 Idaho at 387, 582 P.2d at 733.

Because of the uniqueness of the retained jurisdiction process in Idaho, we conclude that *Mempa* and *Gagnon* cannot be strictly applied to the classification hearings involved in retained jurisdiction. However, in *Gagnon* the court made some cogent observations as to whether counsel should be required at probation revocation hearings. That court said,

> The introduction of counsel into a revocation proceeding will alter significantly the nature of the proceeding. If counsel is provided for the probationer or parolee, the State in turn will normally provide its own counsel; lawyers, by training and disposition, are advocates and bound by professional duty to present all available evidence and arguments in support of their clients' positions and to contest with vigor all adverse evidence and views. The role of the hearing body itself, aptly described in Morrissey as being "predictive and discretionary" as well as factfinding, may become more akin to that of a judge at a trial, and less attuned to the rehabilitative needs of the individual probationer or parolee. In the greater self-

consciousness of its quasi-judicial role, the hearing body may be less tolerant of marginal deviant behavior and feel more pressure to reincarcerate rather than to continue nonpunitive rehabilitation. Certainly, the decision making process will be prolonged, and the financial cost to the State—for appointed counsel, counsel for the State, a longer record, and the possibility of judicial review—will not be insubstantial.

411 U.S. at 787, 93 S.Ct. at 1762.

We share a similar concern about interjecting an unlimited right to counsel into classification hearings in the retained jurisdiction process. We presume that the Idaho Supreme Court considered the possibility of such a requirement when it rendered the decision in *Wolfe* and settled on the limited safeguards espoused in that decision. In our view it would be inappropriate, and unjustified in the instant case, for us to impose an additional procedural requirement of assistance of counsel in such matters. We hold that the district court did not err in determining that, by the authority of *Wolfe*, Schmidt was not entitled to counsel at his classification hearing.

## VIII. Termination of Jurisdiction Without a Hearing.

■ The final issue raised by Schmidt is whether the district court erred in holding that a trial court may terminate its jurisdiction over a defendant without first granting the defendant an opportunity to present evidence in his behalf during a hearing before the court. This issue poses what some observers might view as an anomaly. A defendant has the right to a hearing, with counsel, when he is sentenced, *State v. Ditmars*, 98 Idaho 472, 567 P.2d 17 (1977) *cert. denied*, 434 U.S. 1088, 98 S.Ct. 1284, 55 L.Ed.2d 793 (1978). If he is granted probation, he is entitled to a hearing before the probation can be revoked and a sentence of confinement imposed. *State v. Moore*, 93 Idaho 14, 454 P.2d 51 (1969). However, if he is sentenced to confinement at the outset, subject to review after additional information has been gathered during a period

**350**

of retained jurisdiction, he is not entitled any hearing before the court terminates jurisdiction and orders confinement for the remaining term of the sentence. *See State v. Lopez*, 102 Idaho 692, 693, 638 P.2d 889, 890 (1981); *State v. Phillips*, 99 Idaho 354, 355, 581 P.2d 1173, 1174 (1978); *Belknap v. State*, 98 Idaho 690, 691, 571 P.2d 336, 337 (1977); *see especially, State v. Ditmars, supra.* Until our Supreme Court holds otherwise, we feel bound to adhere to these decisions. We therefore hold the district court did not err in ruling that Schmidt was not entitled to a hearing before the trial court relinquished jurisdiction.

Accordingly, the dismissal of Schmidt's amended application for post-conviction relief is affirmed.

BURNETT and SWANSTROM, JJ., concur.