861 P.2d 1234

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Ramiro BANUELOS, Defendant–Appellant.**

**No. 19643.**

Court of Appeals of Idaho.

Aug. 30, 1993.

Petition for Review Denied Nov. 5, 1993.

Orr & Kime, Caldwell for appellant. Paul F. Kime argued.

Larry EchoHawk, Atty. Gen., Douglas A. Werth, Deputy Atty. Gen., for respondent. Douglas A. Werth argued.

SWANSTROM, Judge, pro tem.

This is an appeal from a judgment of conviction and sentences imposed on Ramiro Banuelos, following the entry of a guilty plea, on two counts of conspiracy to deliver controlled substances. The appeal also includes a review of the order denying Banuelos' motion for withdrawal of his guilty plea which was filed after pronouncement of the sentence. For the reasons set forth below, we affirm the judgment of conviction but vacate an order requiring the defendant to pay restitution.

By indictment of the grand jury, Banuelos was charged with two counts of conspiracy to deliver and two counts of delivery of marijuana and cocaine, I.C. § 18–1701 and I.C. §§ 37–2732(a)(1)(A) and (B). Trial on these four counts began on August 12, 1991. Three days into the trial, the district court accepted Banuelos' change of plea and set sentencing for October 4, 1991. Following sentencing, Banuelos obtained new counsel who filed an I.C.R. 35 motion for reduction of sentence and a motion to allow withdrawal of the guilty plea. Both motions were denied. On appeal, Banuelos attacks the validity of his guilty plea contending that he was not fully advised of the consequences of his plea. He contends as well that he should have been allowed to withdraw his plea on account of the state's breach of the plea agreement. Finally, he asserts that his sentence of forty years, with a fixed ten-year period of incarceration, is excessive.

Banuelos begins by claiming that his plea cannot be deemed to have been a knowing plea because the district court failed to advise him that he could be held liable for costs incurred in his case by law enforcement agencies under the provisions of I.C. § 37–2732(k). He argues that his plea is therefore invalid and cannot be allowed to stand, where his sentence included an order

that Banuelos pay $167,199.90 in investigative costs.

Before accepting a guilty plea, the trial court must satisfy itself that the plea is offered voluntarily, knowingly and intelligently. *State v. Colyer*, 98 Idaho 32, 557 P.2d 626 (1976); *State v. Henderson*, [113 Idaho 411, 744 P.2d 795 (Ct.App. 1987)]. The plea must be entered with "a full understanding of what the plea connotes and of its consequence." *Brooks v. State*, 108 Idaho 855, 857, 702 P.2d 893, 895 (Ct.App.1985) (quoting *Boykin v. Alabama*, 395 U.S. 238, 244, 89 S.Ct. 1709, 1712–13, 23 L.Ed.2d 274 (1969)). In Idaho, the trial court must follow the minimum requirements of I.C.R. 11(c) in accepting pleas of guilty. If the record indicates that the trial court followed the requirements of I.C.R. 11(c), this is prima facie showing that the plea is voluntary and knowing.

*State v. Mauro*, 121 Idaho 178, 180, 824 P.2d 109, 111 (1991), *citing State v. Detweiler*, 115 Idaho 443, 446, 767 P.2d 286, 298 (Ct.App.1989).

We direct our attention therefore to the circumstances surrounding Banuelos' change of plea. A hearing was held the day after defense counsel informed the court that Banuelos would be entering a guilty plea in lieu of continuing with the trial. The court proceeded to advise Banuelos of all of the constitutional rights that he would be waiving by entering a plea. The court specifically asked Banuelos if he understood these rights and was waiving them freely and voluntarily. The court went on to explain that the process allows for the state and defense counsel to make sentencing recommendations to the court, which in this case the court would not be bound to follow. From its further inquiry of Banuelos, the court was satisfied that Banuelos understood English, as well as Spanish used by the interpreter, and that he had not been coerced into changing his plea of guilty. The court clearly spelled out the maximum prison term and fine that could be ordered and that his

convictions could have a negative impact on his immigration status.

The record shows that the district court followed the requirements of constitutional due process in accepting Banuelos' plea. We can also conclude that the plea was made voluntarily and with an understanding of the nature of the charges. Before reaching the conclusion that the plea was a knowing plea, however, we must determine whether a restitution order constitutes a direct consequence of the plea requiring an advisement.

One of the requirements of I.C.R. 11(c) regarding the acceptance of a plea of guilty is a showing that "the defendant was informed of the consequences of the plea, including minimum and maximum punishments, and other direct consequences which may apply." I.C.R. 11(c)(2). At a minimum, a defendant must understand the possible maximum penalty which would be imposed as a consequence of his plea. *State v. Colyer*, 98 Idaho 32, 36, 557 P.2d 626, 630 (1976). With the adoption of the Idaho Criminal Rules in 1980, "[t]he rules have imparted a specific meaning to the 'consequences' of a plea. The consequences are defined in terms of maximum and mandatory minimum sentences." *Brooks v. State*, 108 Idaho 855, 857, 702 P.2d 893, 895 (Ct.App.1985).

In addition, the application of the persistent violator statute has been held to be a direct consequence of pleading guilty, of which the defendant should be informed before his guilty plea is accepted. *State v. Colyer, supra*. Parole consequences, however, are not included among the enumerated "consequences." *Brooks, supra; see also State v. Goodrich*, 104 Idaho 469, 660 P.2d 934 (1983) (lack of advice regarding the possibilities of parole was only one of several factors which could be explored, during an evidentiary hearing, to determine the voluntariness of a plea). Advisement concerning immigration status, specifically the possibility of deportation, which was

alluded to by the district court in Banuelos' case, although it is not required in Idaho, has been statutorily mandated in Washington and Oregon. *See* R.C.W. 10.40.200(2) and ORS § 135.385(2)(d) respectively.

As to an order for restitution of costs incurred by law enforcement agencies in investigation of the violation, there is no clear authority that such an order, which is authorized by I.C. § 37–2732(k) and is within the discretion of the district court, is considered a direct consequence of a guilty plea requiring advisement. We can nevertheless draw a parallel to the treatment of an order for restitution to victims for losses directly resulting from the defendant's criminal conduct, as discussed in *State v. Cameron*, 30 Wash.App. 229, 633 P.2d 901 (1981). The court explained that

> [r]estitution does not turn on a defendant's personal history, but the possibility of restitution stems *directly* from the conviction of a crime that results in some pecuniary gain to the defendant or loss to the victim. RCW 9A.20.030.

> We conclude that restitution is a direct consequence of entering a guilty plea and the sentencing court may not impose restitution upon a defendant who pleads guilty, unless defendant is advised of that possibility prior to entering his plea.

*Id.* at 905 (emphasis added).

■ Banuelos was not notified of the possibility of the court ordering restitution. This was due in part to the court's mistaken impression that the parties had stipulated to the payment of restitution costs. The record, however, does not support any stipulation to that effect by the parties. Accordingly, we conclude that the order of restitution is invalid in the absence of the court's advisement before Banuelos pled guilty. Having previously determined that Banuelos' plea was otherwise voluntarily and intelligently made, the appropriate remedy is to strike the order of restitution from the sentence. *Id.*

Indeed, the state first presented its motion for restitution to the court the day before the sentencing hearing, allowing no opportunity to Banuelos to respond in any meaningful way. On this basis, Banuelos also makes a due process argument against the restitution order, claiming that I.C. § 37–2732(k) is unconstitutional in that no procedure to challenge the amount or the appropriateness of the restitution is defined. However, by striking the restitution order in this case, we defer this constitutional question to another, future case.

■ Banuelos next contends that the district court should have granted the motion to withdraw his guilty plea because of a breach of the plea agreement by the state. According to Banuelos, the state, at all times during the plea negotiations, had discussed a sentence recommendation of no more than eighteen years on the conspiracy to deliver cocaine charge, but at the sentencing hearing had recommended that the court impose an indeterminate life sentence, with a minimum fixed term of fifteen years. Banuelos concedes that the court was free to disregard the recommendations, but insists that the state was bound to its agreement regarding the sentencing recommendation which was consideration for Banuelos' plea. He argues that when the state reneged on its agreement, his plea was no longer voluntary and must be allowed to be withdrawn.

Idaho Criminal Rule 33 governs the withdrawal of guilty pleas. The rule provides in part that "to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea." I.C.R. 33(c). As succinctly stated in *State v. Simons*, 112 Idaho 254, 731 P.2d 797 (Ct.App. 1987),

> [a] motion to withdraw a guilty plea is addressed to the sound discretion of the trial court. *State v. Creech*, 109 Idaho 592, 710 P.2d 502 (1985); *State v. Freeman* [110 Idaho 117, 714 P.2d 86 (Ct.App. 1986)]. Appellate review of the denial of motion to withdraw a plea is limited to whether the district court exercised

sound judicial discretion as distinguished from arbitrary action. *State v. Freeman, supra.* Ordinarily, a plea knowingly, intelligently and voluntarily entered may not be withdrawn after sentencing. We look to the whole record to determine whether it is manifestly unjust to preclude the defendant from withdrawing a guilty plea. *State v. Creech, supra.*

*Id.* at 256, 731 P.2d at 799.

The hearing on the motion for withdrawal of Banuelos' guilty plea was continued in order that the defense might support its claim of manifest injustice in a brief to the court. On the date set, the court elaborated on its analysis of the cases submitted by defense counsel, but not briefed, and ruled on the motion from the bench. The court examined the initial references to the plea that were put on the record August 14, 1991:

COURT: Do either of you want to state anything for the record now or just wait until in the morning?

MR. WOLFF: The plea will be to both counts of conspiracy, your Honor, with the two counts of delivery being dismissed at the time of sentencing. No stringent recommendations on ˙sentencing. Straightforward honesty on the PSI. I've talked to Mr. Chacon where I'm heading with sentencing, but no real confirmation of what I'm going to be recommending at sentencing yet.

COURT: Is that your understanding, Mr. Chacon?

MR. CHACON: It is, judge, and I've conveyed it to my client.

Tr., pp. 99–100. The court also reviewed the colloquy at the change of plea hearing on August 15, 1991, specifically that dealing with the sentencing recommendations:

COURT: Were there any other plea arrangements in this case other than what was stated on the record yesterday, that is, that Case Numbers CR–91–00874 and CR–91–00875 would be moved for dismissal and the Court would take those under advisement and dismiss them at time of sentencing, and the State would base any type of recommendations it has for sentencing upon the presentence investigation?

Is there anything else further, Mr. Wolff, to your knowledge?

MR. WOLFF: Mr. Chacon and I have been talking off and on for the last month. I haven't made any promises. I've told him where I'm looking at going as far as the sentence is concerned and I will honor my discussions with him as far as that, but there is no real set-in-stone type of agreement, but I will honor that as far as what my recommendations will be.

Your Honor, there are some other matters we have discussed, but I prefer not to make them a matter of public record.

COURT: Mr. Chacon, is that your understanding?

MR. CHACON: Yes, judge.

COURT: No other sentencing recommendations or arrangements for this plea other than the dismissals of those cases?

MR. CHACON: That's the arrangement for this case, that's correct, judge.

Tr., pp. 108–10. Lastly, the court considered the affidavits filed in conjunction with the motion for withdrawal of the plea, wherein the state contended that a specific sentencing recommendation of fifteen or eighteen years was not part of the agreement.

The district court found that a specific sentencing recommendation was not part of the plea agreement and was not an inducement or a part of the inducement which produced the guilty plea of Banuelos. Further, the court found that there was no meeting of the minds as to specific sentencing recommendations and that the agreement in this case was, "You plead to two, we dismiss two. We reduce your ex-

posure to the number of years in prison."
The court concluded that Banuelos had not
shown a breach of the agreement by the
state and, therefore, was unsuccessful in
showing "manifest injustice."

■ Banuelos is correct in asserting
that a breach of the plea agreement by the
state affects the voluntariness of the guilty
plea and is fundamental error. *See State
v. Rutherford,* 107 Idaho 910, 693 P.2d
1112 (Ct.App.1985). *Rutherford* also sug-
gests that the burden to show both the
terms of the plea agreement and that the
state failed to comply with its agreement
falls on the defendant who is moving to
have the plea set aside. *Id.* at 914, 693
P.2d at 1116. In addition, because an ap-
pellate court can know only what is re-
vealed on the record, it is incumbent upon
the attorneys to state the agreement in its
entirety on the record, and in a clear and
coherent manner. *Id.; see also* I.C.R.
11(c)(5) and (d)(2). It is likewise the duty of
the court, at the time the plea is offered, to
see that the record contains a clear and full
disclosure of all essential terms of the
agreement reached. Also, on the record,
the court shall satisfy itself that the defen-
dant understands the agreement and how it
will be construed under the applicable pro-
visions of I.C.R. 11.

A careful study of the arguments raised
by Banuelos reveals that the agreement
which he claims the state breached must be
inferred from the record. He argues that
"even in the absence of any records or
transcripts, independent individual recollec-
tions of the defendant and defendant's
counsel establish that there was an agree-
ment ... which was not placed on the
record." He argues that the acquiescence
by defense counsel to the prosecutor's
statements substantiates Banuelos' posi-
tion that the parties had in fact agreed to
terms in addition to those on the record.
However, we cannot speculate that the
agreement leading up to the entry of
Banuelos' plea contained terms which are
not reflected in the record. We reject
these arguments.

We concur with the district court's find-
ings that Banuelos failed to show that a
specific sentencing recommendation was
part of any plea agreement. Although it is
difficult to say from the record what the
state proposed to the court regarding a
recommendation for sentence, the August
14 and August 15 statements on the record
do convey that the matter was unsettled
between the parties. In ruling that no
agreement as to sentencing recommenda-
tions had been reached, the court deter-
mined that the state's affidavit was consis-
tent with the statements made by the pros-
ecutor as found in the transcripts. We find
no error in the district court's conclusion
that Banuelos had not shown a manifest
injustice which would permit withdrawal of
his plea. We affirm the denial of the mo-
tion to withdraw the guilty plea.

■ We also hold that the admonition
by the district court at the change of plea
hearing that he would not later allow
Banuelos to withdraw his plea was not a
"peremptory ruling," as characterized by
Banuelos. The court's lengthy remarks at
the hearing on the motion spelled out the
court's rationale in detail and the basis for
its findings. Our review of the record
shows that the court's actions were within
the discretion prescribed by I.C.R. 33. *See
also Sun Valley Shopping Ctr., Inc. v.
Idaho Power Co.,* 119 Idaho 87, 94, 803
P.2d 993, 1000 (1991) (explaining standard
of review of a discretionary determination
by the district court). We find that the
claim of error regarding this so-called rul-
ing is meritless.

■ Next, Banuelos claims that the dis-
trict court erred when it considered hear-
say statements contained in the presen-
tence investigation report without any sup-
porting indicia of reliability. However, be-
cause Banuelos did not avail himself of the
opportunity to object to, explain or rebut
this adverse information at the sentencing
hearing, this issue has not been preserved
for appellate review. I.C.R. 32; *State v.
Lamas,* 121 Idaho 1027, 829 P.2d 1376 (Ct.
App.1992).

■ Again referring to the presentence investigation report, Banuelos contends that the district court improperly relied on questionable data and improper evidence in the report in arriving at the forty-year sentence with a fixed term of ten years. As a result, he asserts that the court's sole objective in imposing the sentence was retribution and that the sentence is excessive in this case.

■ In reviewing whether the court abused its sentencing discretion, we examine the reasonableness of the sentence in light of the circumstances of the case. *See State v. Broadhead,* 120 Idaho 141, 814 P.2d 401 (1991). We focus on the nature of the offense and the character of the offender. *State v. Reinke,* 103 Idaho 771, 653 P.2d 1183 (Ct.App.1982). We will treat the minimum period of ten years as the probable duration of confinement to determine whether, under any reasonable view of the facts, ten years fixed could be viewed as an abuse of discretion. *See State v. Sanchez,* 115 Idaho 776, 769 P.2d 1148 (Ct.App.1989).

■ In deference to the discretionary authority of the district court, an appellate court will not substitute its view for that of the district court where reasonable minds might differ. *State v. Toohill,* 103 Idaho 565, 566, 650 P.2d 707, 708 (Ct.App.1982).

Pursuant to I.C. §§ 37–2732(a)(1)(A) and –2732(f), the district court could have sentenced Banuelos to life imprisonment on the conspiracy to deliver cocaine charge. The court also imposed a concurrent five-year term on the conspiracy to deliver marijuana charge. Before pronouncing sentence, however, the court instructed Banuelos regarding the destructive influence of drugs in the community and of the costs to individuals who become involved in using and selling drugs. The court considered the contents of the presentence investigation report, but relied most heavily on Banuelos' admissions about the scope of his involvement with the distribution of drugs in Canyon County. The court expressed regret that a man with intelligence and charisma, like Banuelos, would direct his energies to dealing drugs and criminal activities in preference to putting his talents to good use. The court stated plainly that the sentence was designed to protect society, to punish Banuelos and to deter him and others from drug dealing. We hold that the sentence of forty years with ten years fixed was not an abuse of discretion.

In conclusion, we affirm the denial of Banuelos' motion to withdraw his guilty plea. We strike that part of the sentence ordering Banuelos to pay restitution for investigative costs—a consequence of his plea of which he should have been advised. We otherwise affirm the judgment of conviction and sentences.

WALTERS, C.J., and SILAK, J., Acting Judge, concur.