IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 39219

| STATE OF IDAHO, | ) | 2014 Opinion No.: 3 |
|---|---|---|
| | ) | |
| Plaintiff-Respondent, | ) | Filed: January 17, 2014 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| KRISTI L. HURLES, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Darla S. Williamson, District Judge.

Order of restitution <u>reversed in part</u> and <u>affirmed in part</u>, and <u>case remanded</u>.

Sara B. Thomas, State Appellate Public Defender; Shawn F. Wilkerson, Deputy Appellate Public Defender, Boise, for appellant. Shawn F. Wilkerson argued.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent. Jessica M. Lorello argued.

---

GUTIERREZ, Chief Judge

Kristi L. Hurles appeals from the judgment of conviction[1] entered upon her guilty plea to one count of grand theft, in violation of Idaho Code §§ 18-2403(2)(b) and 18-2407(1)(b). After holding restitution hearings, the district court ordered Hurles to pay $204,174.61 in restitution, under Idaho Code § 19-5304, for embezzlement[2] losses and the victim's attorney fees. Hurles argues the district court erred by determining that the holders of the accountant-client privilege

---

[1] Although Hurles appeals from the judgment of conviction, this appeal primarily challenges the restitution order accompanying the judgment of conviction.

[2] Embezzlement and theft are used interchangeably throughout this opinion. In Idaho, theft is a single offense superseding the separate theft offenses, such as embezzlement. Idaho Code § 18-2401. Prior to being repealed, and traditionally, embezzlement referred to theft of personal property by a person who was entrusted with the property by the owner of the property, such as an employee. *See Sparrow v. State*, 102 Idaho 60, 62, 625 P.2d 414, 416 (1981) (quoting since-repealed Idaho Code § 18-2413 defining the crime of embezzlement).

1

did not impliedly consent to waive the privilege. Hurles also contends the district court abused its discretion by awarding restitution for the alleged embezzlement that occurred outside of the time period of the theft Hurles pled guilty to. Furthermore, Hurles claims the restitution award for the embezzlement losses is not based on substantial evidence. As for the attorney fees restitution award, Hurles maintains that the district court abused its discretion by awarding attorney fees incurred by the victim for civil cases. For the reasons that follow, we reverse the restitution order in part, affirm in part, and remand the case to the district court.

## I.

## FACTS AND PROCEDURE

The evidence adduced at the restitution hearings reveals that Hurles worked for a Boise bar and grille (the business and victim) for a total of twenty years. She was a trusted employee and most recently served as the business's bookkeeper. Hurles also served as a bartender. One of Hurles' duties as a bartender was to sell Idaho State Lottery pull-tabs and to pay out on the winning pull-tabs. As the bookkeeper, Hurles was one of two employees, besides the owners, authorized to stock the on-site ATM with petty cash; Hurles, though, was primarily responsible for stocking the ATM. Hurles would also often make the daily deposit at the bank.

After noticing that the business was not receiving the expected commissions from the pull-tab operation, the owners of the business contacted the Idaho State Lottery. The Idaho State Lottery conducted an investigation and determined that Hurles had inflated the pay-out amounts of winning pull-tabs, keeping the excess amounts for herself. In a letter to the Ada County Prosecutor, the Idaho State Lottery Enforcement Division informed the prosecutor of its determination that Hurles had embezzled approximately $10,000 via inflated lottery pull-tab payouts.

The business owners also contacted the Boise Police Department because they were made aware of a discrepancy involving petty cash replenishment checks. An on-site ATM was owned by a third party, but operated by the business. The business was responsible for placing cash in the ATM. The ATM owner would reimburse the business for amounts withdrawn from the ATM and pay the business a portion of the fee collected on each transaction. When the ATM needed to be refilled, a process was implemented to replenish the ATM with cash from the petty cash safe and to track the replenishment of the petty cash through an "IOU" marker and a

replenishment check.[3] The petty cash replenishment check was to be deposited in the business's bank account with the other daily receipts; the amount of petty cash originally removed to replenish the ATM, as written on the replenishment check, was to be replaced with the daily cash receipts. The goal of the process was to maintain a steady balance of petty cash in the petty cash safe and to keep track of the amount of money placed in the ATM. After the Boise Police Department began their investigation, Hurles admitted to the police that she had taken money from the business; she estimated she had taken around $20,000 to $50,000. There is no dispute that Hurles was cashing checks and retaining monies she was supposed to deposit into the business's bank account.

As a result, Hurles was charged by information with two counts of grand theft, each occurring "on or between the 30th day of December, 2008 and the 31st day of December, 2009." (for simplicity, this is referred to as the December 2008 to December 2009 time period). One count related to the lottery pull-tab commissions; the other count related to the petty cash replenishment checks. Hurles and the prosecutor reached a plea agreement wherein Hurles agreed to plead guilty to the count relating to the petty cash replenishment checks and the State agreed to dismiss the other count. The plea agreement was not reduced to writing, but was instead offered into the record orally by the prosecutor at the plea hearing. Following the plea hearing, the district court scheduled a restitution hearing and requested a presentence investigation (PSI) report be prepared.

At the first restitution hearing, the State presented testimony from three witnesses: an Idaho State Lottery investigator; a paralegal, employed by the law firm retained by the business, who prepared a spreadsheet of losses related to the petty cash replenishment checks; and one of

---

[3] The detailed process of replenishing the ATM with cash was as follows: (1) Hurles would check the ATM and note that the ATM was low on funds; (2) Hurles would remove petty cash from the petty cash safe and place the money in the ATM; (3) Hurles would place an "IOU" marker in the petty cash safe with a notation written for the amount of cash removed from the petty cash safe; (4) an owner would write a check in the amount of the IOU marker and replace the IOU marker in the petty cash safe with the replenishment check--the petty cash replenishment check was to have "ATM" written in the memorandum line; (5) Hurles would collect the daily cash receipts from the previous day in a bank bag; (6) Hurles would "sell" the replenishment check to the daily cash receipts bag--that is, Hurles would take the check out of the petty cash safe, place the check in the bank bag, and remove the amount of the replenishment check in cash from the bank bag and place the cash in the petty cash safe; and (7) Hurles would deposit the daily receipts bank bag, including the replenishment checks, at the business's bank.

3

the owners of the business. The lottery investigator testified to the steps she used in determining that the business was short $10,000 from the lottery pull-tab commissions. The paralegal testified that she reviewed copies of checks provided by the owners and then constructed a spreadsheet based on her review of the checks. The spreadsheet was entered into evidence. The spreadsheet contained "a small portion of the universe of checks" the paralegal reviewed because it contained only the checks that were cashed.

The paralegal testified she reached a total of $153,920 in petty cash replenishment check losses from 2005 through 2010. This total was based on the sum of cashed checks that were: (1) stamped "for deposit only," but endorsed by Hurles (totaling $7,200); (2) unstamped, but endorsed by Hurles (totaling $27,760); (3) stamped "for deposit only," but with the stamp stricken and endorsed by Hurles (totaling $4,300); and (4) stamped "for deposit only," but not endorsed (totaling $114,660). Excluded from the restitution total, according to the paralegal, were cashed checks that were: (1) stamped "for deposit only," but endorsed by someone other than Hurles (totaling $11,100); (2) unstamped and not endorsed (totaling $99,110); (3) unstamped, but endorsed by someone other than Hurles (totaling $5,400); (4) unstamped, but signed by an unauthorized signatory (totaling $4,100); (5) stamped with the business's typical deposit stamp, but not stamped "for deposit only" (totaling $500); and (6) stamped "for deposit only," but with the stamp stricken and endorsed by someone other than Hurles (totaling $6,600).

One of the owners of the business testified and was cross-examined by Hurles' defense attorney. Following this witness, Hurles' defense attorney informed the district court that he wished to call the business's accountant. The district court then scheduled a second restitution hearing.

At the second restitution hearing, Hurles' defense attorney called the business's accountant to testify. The accountant testified to his employment and confirmed the business was a client. Hurles' defense attorney asked the accountant if the accountant was familiar with the ATM balance problem, to which the accountant said yes. The defense attorney then asked the accountant to describe the nature of the ATM balance problem. At that point, the prosecutor informed the court that the owners of the business wished to assert their accountant-client privilege. After discussion between the court, Hurles' defense attorney and the prosecutor, the court excused the accountant from the stand. Also during the second restitution hearing, the prosecutor offered a revised total embezzlement loss of $155,440, including both the lottery and

4

petty cash replenishment check losses, after correcting some errors discovered during and in the period following the first hearing.[4]  The court continued the hearing.

At the third restitution hearing and sentencing, Hurles' defense attorney informed the court that the defense had no other witnesses.  Hurles' defense attorney, the prosecutor, and the court then began a discussion concerning the accountant and whether the accountant-client privilege had been waived.  Following the discussion, the court moved forward with sentencing and heard statements from the owners, arguments from the prosecutor and defense attorney, and heard a statement from Hurles.  The district court then sentenced Hurles to a unified term of fourteen years, with two years determinate, and ordered restitution in favor of the business in the amounts of $155,440 for embezzlement losses[5] and $48,734.61 for attorney fees for civil cases. Hurles appeals.

## II.

## ANALYSIS

Hurles argues four points on appeal:  (1) the district court erred by determining that the owners of the business did not impliedly consent to waive their accountant-client privilege; (2) the district court abused its discretion by awarding restitution for the alleged embezzlement that occurred outside of the time period of theft Hurles pled guilty to; (3) the restitution award for the embezzlement losses is not based on substantial evidence;[6] and (4) the district court abused its discretion by awarding attorney fees incurred by the business for civil cases.

## A.     The Accountant-Client Privilege

Hurles argues the district court erred by determining that the business owners did not impliedly consent to waive their accountant-client privilege.  Hurles maintains that the owners

---

[4]     At the first restitution hearing, the initial claimed total embezzlement loss was $163,920, including the $10,000 Idaho State Lottery pull tab loss and the $153,920 petty cash replenishment check loss.  We infer, based on the record, that the petty cash replenishment check loss was reduced to $145,440.

[5]     Part of the embezzlement losses included theft related to an Idaho State Lottery pull tab operation.  This portion of the restitution award, in the amount of $10,000, is not challenged on appeal.

[6]     Because we reverse as to the award of restitution for the embezzlement losses and remand the case for proceedings consistent with this opinion, we need not address whether the restitution award for the embezzlement losses is based on substantial evidence.

5

relied on the accountant's documents to calculate the amount of restitution and injected the issue of the accountant's work. Additionally, Hurles contends the testifying owner waived the privilege because the owner disclosed communications between herself and the accountant, and Hurles contends both owners waived the privilege when they had Hurles' defense attorney speak with the accountant about the amount of restitution. Hurles claims the accountant's testimony is needed to obtain an accurate restitution estimate and to impeach the owner who testified. The State argues Hurles abandoned her claim below because Hurles never allowed the district court to make an adverse ruling. Alternatively, the State contends the owners did not impliedly waive their accountant-client privilege. Ultimately the issue is whether, in ruling on the accountant-client privilege, the district court improperly excluded testimony from the accountant.

Under Idaho Rule of Evidence 515(b),[7] an accountant's client "has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional accounting services to the client" made in certain circumstances. The client can be a person, a corporation, or an association. I.R.E. 515(a)(1). Confidential communications include those "not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional accounting services to the client or those reasonably necessary for the transmission of the communication." I.R.E. 515(a)(5).

We review the district court's decision to admit evidence under an abuse of discretion standard. *State v. Thorngren*, 149 Idaho 729, 731, 240 P.3d 575, 577 (2010). The same standard applies in reviewing a district court's application of a privilege. *E.g.*, *United States v. Mejia*, 655 F.3d 126, 131 (2d Cir. 2011) (stating the court has repeatedly held that rulings on claims of attorney-client privilege are reviewed for an abuse of discretion). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court

---

[7] The accountant-client privilege is codified at Idaho Code § 9-203A. We refer to Idaho Rule of Evidence 515, as the evidentiary rule supersedes the statute in any potential conflict with the statutory section. I.R.E. 1102.

reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

We initially address the State's contention that Hurles abandoned her claim concerning the waiver of the accountant-client privilege. According to the State, Hurles cannot properly raise the issue on appeal because the district court was not given the opportunity to make a ruling on whether the privilege had been waived. The State cites to *State v. Barnes*, 133 Idaho 378, 987 P.2d 290 (1999), where the Idaho Supreme Court stated, "This Court will not 'review a trial court's alleged error on appeal unless the record discloses an adverse ruling which forms the basis for the assignment of error.'" *Barnes*, 133 Idaho at 384, 987 P.2d at 296 (quoting *State v. Fisher*, 123 Idaho 481, 485, 849 P.2d 942, 946 (1993)). At the second restitution hearing, Hurles called the accountant as an adverse witness. After laying a foundation, Hurles' defense attorney inquired of the accountant the nature of the ATM discrepancy. At this point, the prosecutor informed the court that the owners wished to exercise their accountant-client privilege.[8] The court, after additional discussion with the attorneys, recognized the privilege and excused the witness. The court's application of the privilege and exclusion of the accountant creates the adverse ruling that Hurles can appeal from. *Cf. State v. Iwakiri*, 106 Idaho 618, 621, 682 P.2d 571, 574 (1984) (reviewing, on appeal, the trial court's ruling that the attorney-client privilege was waived, which allowed the attorney to testify at trial). The fact that Hurles' defense attorney did not file a motion to reconsider, as suggested by the trial court, does not translate to abandonment of the privilege waiver claim. The State's argument to the contrary cites no legal authority for its position that Hurles was required to move the district court to reconsider its

---

[8]     At the second restitution hearing, after Hurles' defense attorney asked a few foundational questions of the accountant, the following exchange occurred:

| [Defense Attorney]: | And at some point, did it come to your knowledge that there was a controversy or a problem with the ATM balance at the [business]? |
| [Accountant]: | Yes. |
| [Defense Attorney]: | Could you just describe to the court what the nature of that was? |
| [Accountant]: | The ATM machine--the nature of the accounting was that checks would be written-- |
| [Prosecutor]: | Your Honor, just for the record--I apologize--[the owners of the business] would be interested in asserting their privilege to the attorney client privilege under Idaho-- |
| [The Court]: | Is he an attorney? |
| [Prosecutor]: | I mean, accountant client privilege. |

7

decision to exclude the accountant in order to preserve the issue for appeal. Without legal authority, the State has waived the argument, and we need not consider it. Idaho Appellate Rule 35; *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996). Moreover, there is nothing in the Idaho Supreme Court's rules requiring such a post-trial motion to preserve an issue for appeal. In consequence, Hurles has not abandoned the privilege waiver issue.

At the point the privilege was asserted, the question by defense counsel inquired of the accountant's understanding of the problem with the ATM balance. As the PSI report reveals, the accountant had discussed the ATM balance problem with police during the police investigation. A Boise Police Department report, included in the PSI report, states that the accountant explained to the police how he determined the losses relating to the replenishment check embezzlement. Moreover, the same police report references documents originating from the accountant's firm that were included in the PSI report. These communications--which were made to a third party, the Boise Police Department--are not covered by Idaho Rule of Evidence 515. *See Farr v. Mischler*, 129 Idaho 201, 207, 923 P.2d 446, 452 (1996) ("To be a confidential communication the communication must 'not be intended to be disclosed to third persons.' I.R.E. 502(a)(5). Farr's argument fails because he did not act in a manner indicating that the communication was to be confidential."). Considering that the accountant's information recited to the police directly dealt with the embezzlement losses, we must reverse the restitution order as to the award of restitution for embezzlement losses and remand to the district court so that Hurles may pursue the accountant's testimony. On remand, the district court may have to address the applicability of the accountant-client privilege to other testimony by the accountant, an issue on which we do not express an opinion.

## B. The Restitution Award

In addition to the accountant-client privilege issue, we address two specific challenges raised by Hurles attacking the embezzlement losses and attorney fees in the restitution award. Under the statutory scheme of Idaho Code § 19-5304, a district court must order restitution, unless inappropriate or undesirable, if the district court finds the defendant guilty of a crime that resulted in economic loss to the victim and the victim actually suffers the loss. I.C. § 19-5304(2). Economic loss is based on a preponderance of evidence submitted by the prosecutor, defendant, victim, and presentence investigator. I.C. § 19-5304(6). The court may consider hearsay in the PSI report. *Id.*; I.R.E. 101(d)(7). In determining the amount of

restitution, the court must consider factors enumerated in section 19-5304(7). The restitution amount awarded under section 19-5304(2) must be causally related to the crime--both actual and proximate cause must be satisfied. *State v. Corbus*, 150 Idaho 599, 602, 249 P.3d 398, 401 (2011). In addition, "The court may, with the consent of the parties, order restitution to victims and/or any other person or entity, for economic loss or injury for crimes which are not adjudicated or are not before the court." I.C. § 19-5304(9); *accord State v. Hargis*, 126 Idaho 727, 730, 889 P.2d 1117, 1120 (Ct. App. 1995). That is, even if the losses are not causally related to the crime, a defendant may consent to pay restitution.

On appeal, we review the decision to order restitution and the amount of restitution for an abuse of discretion, guided by the consideration of the factors enumerated in section 19-5304(7). *Corbus*, 150 Idaho at 602, 249 P.3d at 401. When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *Hedger*, 115 Idaho at 600, 768 P.2d at 1333.

### 1.     Embezzlement loses

Hurles argues the district court abused its discretion when it included restitution for checks that were cashed between 2005 and November 2008 and January 2009 through 2010. The testimony of the paralegal presented the sum of embezzlement losses from 2005 through 2010. Hurles was charged by information with grand theft during the December 2008 to December 2009 time period. The crime to which Hurles pled guilty was grand theft during the December 2008 to December 2009 time period. Therefore, under section 19-5304(2), the district court was allowed to award restitution for losses suffered by the business during the December 2008 to December 2009 time period, as long as the losses were causally related to the crime charged. *See State v. Schultz*, 148 Idaho 884, 886-87, 231 P.3d 529, 530-31 (Ct. App. 2008).

The district court may award restitution for losses not caused by the adjudicated crime with the consent of the parties. I.C. § 19-5304(9). Generally, consent to pay restitution beyond the adjudicated crime is found in the plea agreement in cases where the defendant pleads guilty via a plea agreement. *E.g.*, *State v. Shafer*, 144 Idaho 370, 161 P.3d 689 (Ct. App. 2007) (determining that restitution could not be awarded under section 19-5304(2), but restitution could

9

be awarded under section 19-5304(9) because the defendant agreed in the plea agreement to pay restitution in an "amount to be determined").

When a plea is offered pursuant to a plea agreement, "the court shall, on the record, require the disclosure of the agreement in open court or, on a showing of good cause, in camera, at the time the plea is offered." Idaho Criminal Rule 11(f)(2). Full disclosure of the plea agreement on the record is necessary because, among other reasons, "[i]t is impossible for a trial judge to properly administer a plea agreement if it consists of secret terms known only to the parties." *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986). If a plea agreement has not been reduced to writing, "it is incumbent upon the attorneys to state the agreement in its entirety on the record, and in a clear and coherent manner." *State v. Banuelos*, 124 Idaho 569, 575, 861 P.2d 1234, 1240 (Ct. App. 1993); *accord State v. Rutherford*, 107 Idaho 910, 914, 693 P.2d 1112, 1116 (Ct. App. 1985).

Plea agreements are contractual in nature and generally are examined by courts in accordance with contract law standards. *State v. Allen*, 143 Idaho 267, 272, 141 P.3d 1136, 1141 (Ct. App. 2006). "As with other contracts, provisions of plea agreements are occasionally ambiguous; the government 'ordinarily must bear responsibility for any lack of clarity.'" *State v. Peterson*, 148 Idaho 593, 596, 226 P.3d 535, 538 (2010) (quoting *United States v. De la Fuente*, 8 F.3d 1333, 1338 (9th Cir. 1993)). "[A]mbiguities are construed in favor of the defendant. Focusing on the defendant's reasonable understanding also reflects the proper constitutional focus on what induced the defendant to plead guilty." *Id.* (quoting *De la Fuente*, 8 F.3d at 1337 n.7) (alteration in original). *See also State v. Fuhriman*, 137 Idaho 741, 745, 52 P.3d 886, 890 (Ct. App. 2002); *State v. Cole*, 135 Idaho 269, 272, 16 P.3d 945, 948 (Ct. App. 2000). The determination that a plea agreement is ambiguous is a question of law; however, interpretation of an ambiguous term is a question of fact. *Allen*, 143 Idaho at 272, 141 P.3d at 1141. Factual determinations made by a trial court will not be set aside on review unless they are clearly erroneous. *Peterson*, 148 Idaho at 595, 226 P.3d at 537.

In *State v. Nienburg*, 153 Idaho 491, 283 P.3d 808 (Ct. App. 2012), Nienburg entered into a plea agreement that provided, "Restitution *is not to exceed* $1,156.98." *Id.* at 493, 283 P.3d at 810 (emphasis added). Nienburg contended that $1088.98 for vehicle repairs, resulting from damage to a police vehicle caused by Nienburg's dog that escaped when Nienburg fled, was not

allowed as part of the restitution for the crime Nienburg pled to, driving under the influence. On appeal we determined the plea agreement was unambiguous:

> The words of the agreement include no expression of consent by Nienburg to pay any amount of restitution or to pay for any specified economic loss. They also do not express any consent by Nienburg to pay for restitution that was not proximately caused by his DUI, the offense to which he pleaded guilty. The stated agreement was a cap on the amount of restitution to which Nienburg could be subjected, and nothing more.

*Id.* at 497, 283 P.3d at 814. Accordingly, we concluded:

> [E]xcept for setting a cap on the amount that may be awarded, the plea agreement did not alter the operation of the Idaho restitution statutes. It did not relieve the State of its burden to prove any amount of restitution claimed, nor did it subject Nienburg to payment of restitution not proximately caused by the offense to which he pleaded guilty.

*Id.* at 497-98, 283 P.3d at 814-15.

In this case, the plea agreement's provision concerning restitution was not reduced to writing, but was instead orally offered into the record by the prosecution. The prosecutor stated:

> Your Honor, the state's going to recommend a unified sentence of 14 years, 2 years fixed with 12 indeterminate. The state *is going to seek restitution* on all DRs that were disclosed in discovery. I have a list of those right here, but I think defense counsel understands the ones we're talking about.

(Emphasis added.) There are two issues with this plea agreement. First, the plea agreement only notes that the State would "*seek* restitution." (Emphasis added.) The words of the agreement include no expression of consent by Hurles to pay any amount of restitution or to pay for any specified economic loss beyond the crime charged. The words of the agreement only inform the court of what the State would try to recover; "It did not relieve the State of its burden to prove any amount of restitution claimed . . . ." *Id*. Therefore, under the limitations of section 19-5304, restitution is limited to losses caused by the crime: embezzlement during the December 2008 to December 2009 time period. Second, even if this Court were to stretch the reading of the plea agreement to include consent, the plain language of the plea agreement does not express what Hurles consented to pay restitution for. To the extent that the plea agreement expressed consent to pay restitution "on all DRs," the record does not reveal what "DRs" are and if the "DRs" refer to some time period outside of the time period charged. The ambiguity as to what (if anything) Hurles agreed to pay restitution for or what "DRs" means, must be resolved in favor of the

11

defendant. Therefore, restitution is awardable only for embezzlement losses within the December 2008 to December 2009 time period.

The State suggests that Hurles consented to pay restitution at the third restitution hearing and sentencing nearly *six months* after Hurles agreed to the plea agreement and entered a guilty plea in reliance on the agreement. At the third restitution hearing, the district court addressed restitution as part of the sentencing:

| [The Court]: | All right. Let's go ahead and go forward with sentencing. So the restitution . . . the court does order at this time [is] $204,174. |
|---|---|
| | Ms. Hurles, you previously appeared in court, and you pled guilty to grand theft, Count II; and Count I was dismissed. The state is going to recommend an underlying sentence of two years fixed plus 12 indeterminate for a total of 14 years. You are to pay restitution on all incidences, not simply the one grand theft charge, but the entire time that you were there working for the employer and any thefts that may have occurred. So restitution was to cover all of that. The state is going to ask for imposition, that you go to the penitentiary, and you're free to argue for something different. |
| | *Is that your understanding of the prior proceedings, Ms. Hurles?* |
| [Hurles]: | Yes, ma'am. |

(Emphasis added.)

We are not convinced that Hurles' statement to the court is consent to pay restitution. Instead, the statement merely offers Hurles' acquiescence to the court's description of what had happened in prior proceedings. Moreover, a defendant's acquiescence to a district court's error in recalling what the plea agreement was does not pollute the waters upstream. As we recognized in *Nienburg*, the district court's error applying the restitution statute or recalling the restitution terms does not obliterate the plea agreement that the defendant and the State agreed to, nor is the State's statutory burden changed. What is more, if we accept the State's contention, it would be quite perplexing for a district court to announce that it is ordering restitution *and then* seek consent when section 19-5304(9) mandates the court to first have "the consent of the parties" in order to award restitution outside of section 19-5304(2).

In sum, the record reveals that Hurles pled guilty to embezzlement during the December 2008 to December 2009 time period. Hurles' plea agreement does not express Hurles' consent to

12

pay restitution; in contrast, it reflects that the State would "seek" restitution. The record does not reflect that Hurles consented to pay restitution for unadjudicated crimes at the sentencing hearing held more than six months after the plea agreement was entered into the record. On remand, in accordance with section 19-5304, restitution is awardable for embezzlement losses during the December 2008 to December 2009 time period, the time period of theft that Hurles pled guilty to.

### 2. Attorney fees

Hurles also contends the district court abused its discretion by awarding restitution for attorney fees incurred by the business for civil cases. Included in the attorney fees were fees for six expenditure categories: (1) attorney fees for a *possible* complaint against the business's accountant and the accountant's firm; (2) fees paid to a law firm for an accountant's review in preparation of filing a complaint against the business's accountant and the accountant's firm; (3) attorney fees associated with the *actual* complaint against the business's accountant and the accountant's firm; (4) attorney fees associated with a complaint against the business's bank; (5) attorney fees associated with filing an adversary complaint in Hurles' bankruptcy; and (6) attorney fees associated with Hurles' restitution hearing.

At the first restitution hearing, in response to a question from the district court, the testifying owner of the business stated that she incurred attorney fees. The district court then stated that it needed to be apprised of the amounts the owners were spending "on attorneys and accountants and other people to figure out what's been stolen." Immediately after the district court made this statement, Hurles' defense attorney objected, and the district court stated:

> You can object to it. But if you [the testifying owner] would provide that information to me at the final restitution hearing, I'd like to know that to know what all the victim is out as a result of the theft that occurred to the victim. The victim is entitled to be paid for compensation for what they are out as a result of the theft.

Hurles argues that under the analysis of *State v. Parker*, 143 Idaho 165, 139 P.3d 767 (Ct. App. 2006), attorney fees for civil cases are noneconomic damages and cannot be awarded via restitution. Specifically, Hurles contends the fees associated with a complaint against the accountant and the accountant's firm are based on the accountant's breach of duty and are against a third party. Hurles notes that the basis for the lawsuit against the bank is unclear and that the lawsuit is against a third party. As to the fees related to the bankruptcy, Hurles asserts

the preparation of the bankruptcy adversary complaint was a move to prevent future harm and is not compensable under *Parker*. Hurles further argues the amount of the attorney fees associated with Hurles' restitution hearing is unreasonable because it represents the amount spent for a paralegal to prepare a spreadsheet.

In *Parker*, we analyzed whether certain attorney fees were a direct economic loss as a result of criminal conduct. Parker was a bookkeeper at a business when she forged ten business checks and deposited them into her own account. Parker pled guilty to one count of forgery. A provision in the restitution order required Parker to pay attorney fees in the victim's civil case against Parker. We looked to prior cases and determined that economic loss awardable as restitution included "necessary expenses or losses that the victim incurred in order to address the consequences of the criminal conduct." *Id.* at 167, 139 P.3d at 769. We also noted that an expense to prevent future harm was not compensable as restitution. *Id.* (citing *State v. Waidelich*, 140 Idaho 622, 624, 97 P.3d 489, 491 (Ct. App. 2004)). The principal question in assessing the restitution award for attorney fees in *Parker* was whether the attorney fees for filing the civil lawsuit were an expense that was necessary in order for the victim to recover the losses caused by Parker's forgeries. *Id.* at 168, 139 P.3d at 770. The victim's civil complaint, although including a claim for the amount of forged checks, also included claims for damages for overpayment of wages and for conspiracy and unjust enrichment related to two other defendants. *Id.* The lawsuit and attorney fees "were unnecessary to recover the victim's direct loss caused by the forgeries, for that loss was entirely compensable through the restitution order in the criminal case." *Id.* Thus, we held the attorney fees in the *Parker* lawsuit were *not* an economic loss under section 19-5304(1)(a). *Parker*, 143 Idaho at 168, 139 P.3d at 770.

a. **Attorney fees concerning the accountant and the accountant's firm and the bank**

Of the six expenditure categories of attorney fees awarded, three concern a legal action against the business's accountant and the accountant's firm, and one concerns a legal action against the business's bank. As both parties acknowledge, the record contains only a scintilla of information concerning the purpose behind the lawsuits. Indeed, the State acknowledges that "the record does not include much detail regarding the lawsuits filed by the [owners of the business] against their accountant and bank," but the State suggests "the lawsuits were undoubtedly filed as the result of Hurles' thefts." Before determining whether the attorney fees

14

were caused by the crime, we must determine if the attorney fees are a direct economic loss under *Parker*.

For the attorney fees to be considered a direct economic loss, they must be necessary for the business to recover the losses caused by Hurles' embezzlement. *Parker*, 143 Idaho at 167, 139 P.3d at 769. We cannot say that the attorney fees associated with an action against the accountant and the accountant's firm are necessary to recover the losses from Hurles' crime. Accordingly, the attorney fees for the legal action concerning the accountant and the accountant's firm are not awardable as restitution. The same is true with the attorney fees for an action against the business's bank, as they are not necessary to recover losses that were embezzled by Hurles.

### b. Attorney fees concerning the bankruptcy proceedings

The business also incurred attorney fees for the preparation and filing of an adversary complaint in Hurles' bankruptcy. As the PSI investigator noted, Hurles and her husband filed for bankruptcy in December 2010. When a bankruptcy proceeding is pending, "[Federal Rule of Bankruptcy Procedure] 7001 sets forth ten matters that must be brought as adversary proceedings, including, with exceptions not relevant in this case, a proceeding to recover money or property." *In re Dean*, 359 B.R. 218, 221 (Bankr. C.D. Ill. 2006). "Adversary proceedings have been described as 'full blown federal lawsuits within the larger bankruptcy case.'" *Id.* (quoting *In re Wood and Locker, Inc.*, 868 F.2d 139, 142 (5th Cir. 1989)). Once Hurles filed for bankruptcy, it became necessary for the business to incur attorney fees to prepare and file an adversary complaint to recover losses caused by Hurles' embezzlement. Thus, the attorney fees related to the bankruptcy adversary complaint are an economic loss under *Parker*. Contrary to Hurles' assertion that the fees are to prevent a future harm and not compensable, the fees are not meant to prevent future harm as referenced in *Waidelich*, 140 Idaho at 624, 97 P.3d at 491. In *Waidelich*, Waidelich had attempted to break into the victim's home and steal a puppy. The owner sought restitution for boarding the puppies "out of concern that Waidelich or his accomplices would return to steal the puppies." *Id.* at 623, 97 P.3d at 490. Because the puppy-boarding expenses were an attempt to prevent a future harm, we determined they were "not a proper item of restitution under Idaho Code § 19-5304." *Id.* at 624, 97 P.3d at 491. Here, the attorney fees for preparation of an adversary complaint in the bankruptcy proceeding were necessary in order for the business to protect the right to recover the losses already directly

15

caused by Hurles' embezzlement. Otherwise, the business's claim against Hurles might have been discharged in bankruptcy. Accordingly, the district court did not abuse its discretion by awarding attorney fees concerning an adversary complaint made necessary as a result of Hurles' bankruptcy.

### c. Attorney Fees Concerning the Restitution Hearing

The business further incurred attorney fees by having a law firm represent it during the restitution hearing, including fees associated with the preparation of the embezzlement loss spreadsheet prepared and presented by the paralegal. Attorney fees spent determining the amount of restitution for the defendant's crime are allowed under *Parker*, as they are necessary to recover the losses related to a defendant's crime. *Parker*, 143 Idaho at 167, 139 P.3d at 769. Here, the award included restitution for the attorney fees incurred in preparing a spreadsheet showing embezzlement losses from 2005 through 2010. However, the restitution statute limits the discretion of the court in awarding restitution to the crime charged. In this case, that time frame is limited to the December 2008 to December 2009 time period, and on remand the attorney fees awarded should be adjusted accordingly. Because we reverse the restitution order as to the award of attorney fees concerning the restitution hearings and remand the case, we do not address Hurles' contention that these fees are unreasonable.

### III.

### CONCLUSION

We reverse the restitution order as to the award of restitution for embezzlement losses and remand the case for proceedings consistent with this opinion. At the time the accountant-client privilege was asserted, the accountant was not asked to disclose information protected by the privilege. We further conclude that the district court, on remand, may only award restitution for the December 2008 to December 2009 time period.

We reverse the award of restitution for attorney fees concerning the accountant and the accountant's firm and concerning the bank. Attorney fees for a legal action against the accountant, the accountant's firm, and the business's bank are not awardable as restitution.

We reverse the award of restitution for attorney fees concerning the restitution hearing and remand the case for proceedings consistent with this opinion. The attorney fees concerning the restitution hearing were necessary to recover the embezzlement. However, such restitution is limited to the December 2008 to December 2009 time period.

16

We affirm the award of restitution for attorney fees concerning the bankruptcy proceeding. The district court did not abuse its discretion by awarding attorney fees concerning an adversary complaint made necessary as a result of Hurles' bankruptcy.

As such, the restitution order is reversed in part and affirmed in part. We remand the case for further proceedings consistent with this opinion.

Judge LANSING and Judge MELANSON **CONCUR.**