**IN THE SUPREME COURT OF THE STATE OF IDAHO**

**Docket No. 43286-2015**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | **Boise, February 2016 Term** |
| Plaintiff-Respondent, | ) | |
| | ) | **2016 Opinion No. 55** |
| v. | ) | |
| | ) | **Filed: May 4, 2016** |
| GERALD K. UMPHENOUR, | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Second Judicial District of the State of Idaho, in and for Clearwater County.  Hon. Michael J. Griffin, District Judge.

The judgment of the district court is <u>affirmed</u>.

Eric D. Fredericksen, Deputy State Appellate Public Defender, Boise, argued for appellant.

Russell J. Spencer, Deputy Attorney General, Boise, argued for respondent.

_____

EISMANN, Justice.

This is an appeal out of the Second Judicial District contending that the district court failed to secure an express waiver from the defendant of his right to a jury trial before proceeding with a court trial.  Because the aberrant procedure used by the district court was, in essence, a guilty plea and not a court trial, we affirm the judgment of the district court.

**I.**
**Factual Background.**

On August 30, 2012, an information was filed charging Gerald K. Umphenour with possession of methamphetamine, a felony, and with resisting and obstructing an officer and having an open container of alcohol in a motor vehicle, both misdemeanors.  He entered a plea of not guilty to the charges, and the district court set a jury trial to commence on May 22, 2013, at 9:00 a.m.

About fifteen minutes before the jury trial was scheduled to commence, the district court went on the record with the prosecutor, Mr. Umphenour, and his counsel present. The court stated that both counsel had a proposal to "stipulate to certain facts, and that the Court would make findings based upon those facts." Mr. Umphenour's counsel agreed and said that he had gone over with Mr. Umphenour the district court's proposed jury instruction setting forth the elements of the crime of possession of methamphetamine and that Mr. Umphenour would stipulate that those elements of the crime were true. In addition, the State would dismiss the two misdemeanors, Mr. Umphenour would remain free on bond, the sentencing would occur at a later time, and there was no agreement regarding any recommended sentence.

Mr. Umphenour's counsel read the four elements of the crime as set forth in the jury instruction: "[1] On or about June 6th; [2] in the State of Idaho; [3] Gerald K. Umphenour possessed any amount of methamphetamine; and four, the defendant either knew it was methamphetamine or believed it was a controlled substance." The prosecutor also stipulated to those facts. The district court asked Mr. Umphenour if he was stipulating or agreeing to the facts as recited by his attorney, and Mr. Umphenour answered, "Yeah."

After reciting the terms of the agreement, the court asked, "And so it's my understanding that both counsel want me to make a finding with respect to guilt or innocence based upon the stipulation that's been entered into by both parties?" Mr. Umphenour's counsel and the prosecutor both said that was correct. The court then stated that based upon the stipulation it found the facts to be as recited by Mr. Umphenour's counsel and that "[b]ased upon those stipulated facts and findings, the Court does find that Mr. Umphenour is guilty of the offense in count one, that is, possession of a controlled substance."

The district court ultimately sentenced Mr. Umphenour to the custody of the Idaho Board of Correction for a term of four years, with the first six months fixed and the remainder indeterminate. The court also imposed court costs of $265.50, a fine of $500.00, and restitution to the state police forensics laboratory in the amount of $100.00. Mr. Umphenour timely appealed.

The appeal was initially heard by the Idaho Court of Appeals, which vacated Mr. Umphenour's conviction on the ground that the district court had conducted a court trial without first obtaining Mr. Umphenour's personal, express waiver of his right to a jury trial. We granted the State's petition for review. In cases that come before this Court on a petition for review of a

decision of the Court of Appeals, we do not review the decision of the Court of Appeals. We hear the case anew as if the appeal had come directly to this Court. *State v. Suriner*, 154 Idaho 81, 83, 294 P.3d 1093, 1095 (2013).

## II.
### Was Mr. Umphenour deprived of his constitutional right to a jury trial, under both the Idaho and United States Constitutions, when the district court held a court trial in the absence of any waiver of that right by Mr. Umphenour?

Mr. Umphenour contends that his judgment of conviction must be set aside because "his constitutional right to a jury trial was violated when his guilt was found by the district court, rather than a jury, in the absence of a personal waiver." To address that issue, we must first determine the nature of what occurred in the district court on May 22, 2013. Was it a court trial or was it a guilty plea? It is clear that it was a guilty plea.

The information charged Mr. Umphenour with possession of methamphetamine as follows: "That the Defendant, GERALD K. UMPHENOUR, on or about the 6[th] day of June, 2012, in the City of Orofino, County of Clearwater, State of Idaho, did willingly, knowingly, intentionally and unlawfully possess a controlled substance, to-wit: Methamphetamine, a Schedule II narcotic drug." The district court's proposed jury instruction accurately set forth the elements of the crime charged.[1] Admitting the elements of the crime alleged in the charging document is simply pleading guilty to the crime charged. As the United States Supreme Court stated in *Brady v. United States*, 397 U.S. 742 (1970), "Central to the plea and the foundation for

---

[1] The district court's proposed jury instruction is not in the record. From Mr. Umphenour's counsel's reading of the instruction, it was obviously based upon ICJI 403. Thus, the jury instruction would have been as follows:

> In order for the defendant to be guilty of Possession of a Controlled Substance, the state must prove each of the following:
> 1. On or about June 6th
> 2. in the state of Idaho
> 3. Gerald K. Umphenour possessed any amount of methamphetamine, and
> 4. the defendant either knew it was methamphetamine or believed it was a controlled substance.
> If any of the above has not been proven beyond a reasonable doubt, you must find the defendant not guilty. If each of the above has been proven beyond a reasonable doubt, then you must find the defendant guilty.

We have previously held that ICJI 403 accurately sets forth the elements of the crime of possession of a controlled substance. *State v. Blake*, 133 Idaho 237, 241 n.1, 985 P.2d 117, 121 (1999).

3

entering judgment against the defendant is the defendant's admission in open court that he committed the acts charged in the indictment." *Id*. at 748. By admitting the elements of the crime, Mr. Umphenour admitted the acts charged in the information.

Once Mr. Umphenour admitted the elements of the crime charged, there was nothing to be tried by the district court. It was agreed that the two misdemeanors would be dismissed. A trial is "[a] formal judicial examination of evidence and determination of legal claims in an adversary proceeding." *Black's Law Dictionary* 1510 (7th ed. 1999). A court trial is: "A trial before a judge without a jury. The judge decides questions of fact as well as questions of law." *Id*. There were no questions of fact for the district court to decide, and the court did not find any facts. The only issue for the court was whether Mr. Umphenour's admission of the four elements set forth in the court's proposed jury instruction was sufficient for the court to conclude that Mr. Umphenour was guilty of the crime. That was no different from a defendant admitting as true the allegations in the charging document and the court then accepting the defendant's guilty plea. When accepting a guilty plea, the court does not conduct a court trial. It is apparent that Mr. Umphenour understood that what occurred was, in essence, a guilty plea because he later filed a pro se motion seeking to withdraw his guilty plea.

By holding that what occurred was in reality a guilty plea, we are not endorsing the aberrant procedure conducted by the district court in this case. The parties did not explain why they chose such a deviation from established procedures. One possibility is that the court minutes for February 19, 2013, state that Mr. Umphenour pled guilty, but the court refused to accept his guilty plea after hearing his explanation of the circumstances. The minutes do not state what explanation he gave, only that after hearing it the court refused to accept the guilty plea. It may be that the procedure conducted here was concocted by counsel and accepted by the court as being a form of an *Alford* plea. If the case could not have been resolved by a guilty plea, whether it was an admission of acts constituting the crime or an *Alford* plea, then the court should have proceeded with the jury trial. The jury was waiting, and the witnesses had been subpoenaed.

The procedure adopted simply created fertile ground for an appeal and possibly post-conviction relief. A guilty plea "is more than an admission of past conduct; it is the defendant's consent that judgment of conviction may be entered without a trial—a waiver of his right to trial before a jury or a judge." *Brady*, 397 U.S. at 748. Mr. Umphenour obviously knew he was

4

giving up his right to a jury trial. The waiver of that right need not be express. *State v. Colyer*, 98 Idaho 32, 34, 557 P.2d 626, 628 (1976). "Although the record must show that the defendant waived his constitutional rights and understood the consequences of pleading guilty, we think it is sufficient if such waiver or understanding can be fairly inferred from the record as a whole." *Id*. Mr. Umphenour's waiver of his right to a jury trial can be fairly inferred from the record as a whole in this case.[2]

In holding that his waiver of the right to a jury trial could be fairly inferred, we are only referring to a waiver of that right in connection with a guilty plea. We express no opinion as to whether it would have been adequate had he really waived a jury trial and had a court trial. We also admonish courts to obtain an express waiver of the right to a jury trial when accepting a guilty plea. Again, what the district court did here simply created fertile ground for an appeal and for post-conviction relief.

In addition to the right to a trial by jury, there are other requirements for a constitutional guilty plea. "Whether a plea is voluntary and understood entails inquiry into three areas: (1) whether the defendant's plea was voluntary in the sense that he understood the nature of the charges and was not coerced; (2) whether the defendant knowingly and intelligently waived his rights to a jury trial, to confront his accusers, and to refrain from incriminating himself; and (3) whether the defendant understood the consequences of pleading guilty." *Colyer*, 98 Idaho at 34, 557 P.2d at 628.

---

[2] This case was initially set for a jury trial to commence on February 4, 2013, and a pretrial to be held on January 22, 2013. The court minutes for the pretrial state that Mr. Umphenour was present and that his attorney advised the court that there was a resolution of the case, that the jury trial should be vacated, and that the case should be set for a change of plea. The minutes reflect that the court then set the case for a change of plea on February 19, 2013, and vacated the jury trial. The court approved and signed the minutes.

On February 19, 2013, Mr. Umphenour pled guilty to the charge of possession of methamphetamine, but the district court refused to accept the guilty plea after hearing Mr. Umphenour's explanation of what had occurred. The case was ultimately reset for a jury trial to commence at 9:00 a.m. on May 22, 2013. The proceeding to resolve the case occurred on that date about fifteen minutes before the jury trial was to begin. Mr. Umphenour obviously did not just happen to be in the courthouse on that day. Under the agreement stated on the record, he would stipulate to the elements of the possession charge as set forth in the jury instruction, he would remain free on bond, the sentencing would be later, and the two misdemeanors would be dismissed. The district court advised him that it would be at least eight weeks before the sentencing would occur because "it does take a little bit of time in order to get a sentencing packet or what they call a presentence report, and they usually do a substance abuse screening when it's this type of charge, and that's usually done as part of the packet."

Mr. Umphenour obviously did not think that the matter would then be tried to a jury. At the conclusion of the proceeding, the court asked him, "When did you want to go to work in North Dakota, or are you working there now?" He answered: "I was supposed to leave already, but I didn't go yet. I was waiting to get this taken care of."

In his dissent, Justice Horton raises the issue that the record on appeal does not show that the district court advised Mr. Umphenour of his rights to confront his accusers and to refrain from incriminating himself and of the consequences of pleading guilty. If that issue had been raised on appeal, I would agree that the judgment must be vacated.

On appeal, Mr. Umphenour has not challenged his guilty plea on the ground that the record does not reflect that he was advised of and waived his rights to confront his accusers and to refrain from incriminating himself and that he was informed of and understood the consequences of pleading guilty. The transcript of the proceedings on May 22, 2013, does not include any indication that those matters were addressed by the district court, and the record on appeal is insufficient to conclude that he waived these rights and understood the consequences of pleading guilty. The court minutes of Mr. Umphenour's arraignment state: "Defendant understands charges"; "Court advises of rights"; "Defendant understands his rights, the possible penalties and the charges against him"; "Court advises of the rights he will give up upon a guilty plea"; and "Defendant advises he understands the rights he will give up upon a plea of guilty." However, there is no transcript in the record on appeal that shows what was actually said by the district court and Mr. Umphenour during this exchange. We cannot presume that Mr. Umphenour was properly advised by the district court of his rights, of the possible penalties, and of the rights he would waive if he pled guilty. The failure of appellate counsel to raise this issue on appeal is either the result of ineffective assistance of appellate counsel or of knowing what Mr. Umphenour was told in the prior proceedings, since the State Appellate Public Defender typically obtains transcripts of all of the court hearings in a case.

## III.
### Did the District Court Abuse Its Discretion in Denying Mr. Umphenour's Motion to Withdraw His Guilty Plea?

Anticipating that the proceedings on May 22, 2013, may be construed to be a guilty plea rather than a court trial, Mr. Umphenour contends that the district court abused its discretion in ruling that it did not have jurisdiction to hear his motion to withdraw his guilty plea.

On September 27, 2013, Mr. Umphenour filed a pro se notice of appeal. The state appellate public defender was then appointed to represent him on appeal, and on November 20, 2013, it filed an amended notice of appeal. On June 5, 2014, Mr. Umphenour filed a pro se

Motion for Commutation of Sentence, Suspension of Execution of Judgment and Placement on Supervised Probation / Drug Court or Manifest Injustice for Withdraw [sic] of Plea. He also filed a motion and affidavit in support of appointment of counsel and a motion for a hearing so that he could present oral argument in support of a motion for reduction of his sentence. On June 10, 2014, the district court issued an Order Denying Motions, in which it stated that Mr. Umphenour had filed "a motion for appointment of counsel; a motion to withdraw his plea of guilty pursuant to ICR 33(c); and a motion for commutation of his sentence pursuant to ICR 33(d)." The court did not rule on the motions, but simply held, "This court does not have jurisdiction to hear these motions." However, on January 6, 2015, the court issued an Order Denying Motion in which it denied Mr. Umphenour's pro se motion to withdraw his guilty plea.

Upon the filing of Mr. Umphenour's notice of appeal, the district court had no jurisdiction to take any action in the case except as permitted in Idaho Appellate Rule 13, *State v. Lemmons*, 158 Idaho 971, 974, 354 P.3d 1186, 1189 (2015), or Idaho Appellate Rule 13.3(a), which provides that before an opinion is issued, this Court may remand a case on appeal to the district court to take further designated action. Because we did not remand this case to the district court pursuant to Rule 13.3(a), Rule 13(c) sets forth the power and authority of the district court to rule on motions and take actions while this case is on appeal. The only provision of that rule that is arguably applicable to a motion to withdraw a guilty plea is subsection 13(c)(10), which states that the court can "[e]nter any other order after judgment affecting the substantial rights of the defendant as authorized by law." Mr. Umphenour has not cited any law authorizing a district court to rule on a motion to withdraw a guilty plea while the case is on appeal, nor are we aware of any such law. Therefore, the district court did not have jurisdiction to rule on his motion to withdraw his guilty plea.

**IV.**
**Conclusion.**

We affirm the judgment of the district court.

Chief Justice J. JONES and Justice W. JONES **CONCUR.**

7

BURDICK, Justice, dissenting.

I respectfully dissent from the majority opinion because I am unable to conclude that what happened before the district court on May 22, 2013 was a guilty plea. Rather, the record reflects that a bench trial was conducted, albeit an irregular one. The transcript from that day shows that the following colloquy occurred between the court and the parties:

**THE COURT:** Counsel indicated before we came in that you had discussed this case further, and that there was a proposal that the parties stipulate to certain facts, and that the Court make findings based upon those facts. Is that generally what counsel wanted to do?

**MR. KOVIS:** Yes, Your Honor. I talked with Mr. Umphenour, and I've gone over your proposed jury Instruction No. 2, which had the elements of the possession of a controlled substance elements one, two, three, and four: On or about June 6th; in the State of Idaho; Gerald K. Umphenour possessed any amount of methamphetamine; and four, the defendant either knew it was methamphetamine or believed it was a controlled substance. Mr. Umphenour would stipulate to all of that being true.

**THE COURT:** Mr. Tyler, is the State also stipulating to those facts?

**MR. TYLER:** Yes, Your Honor.

**THE COURT:** Mr. Umphenour, you've had enough time to discuss this with your attorney; is that right?

**THE DEFENDANT:** Yeah, we talked this morning.

**THE COURT:** Okay. Well, after talking to him this morning at this time are you stipulating or agreeing that those facts that were just recited by Mr. Kovis are, in fact, true?

**THE DEFENDANT:** Yeah.

**THE COURT:** Okay, and has anybody promised you anything, Mr. Umphenour, as far as what would happen if you stipulated to those facts?

**THE DEFENDANT:** No.

**MR. KOVIS:** I just want to be clear, I did tell Mr. Umphenour that the two misdemeanor cases would be dismissed. The sentencing would be down the road; that he would not be incarcerated today. It's an open sentencing. We can argue that if he's placed on probation he can apply for unsupervised probation so he can go to North Dakota, or if he's on supervised probation he can ask for an interstate

8

|  |  |
|---|---|
| | compact, whatever you call it, so that he can go to North Dakota. |
| **THE COURT:** | Okay. Yeah, and I forgot about the two misdemeanors. It's my understanding those two misdemeanors would be dismissed, and that's your understanding, Mr. Umphenour? |
| **THE DEFENDANT:** | I thought that one—I thought the one open container was already dismissed. |
| **THE COURT:** | Well, if it wasn't it's going to be, how is that? I don't know. I would have to go look through the file. But if it's not dismissed it's going to be dismissed. And then sentencing would not occur today, but obviously you would be free to—you wouldn't be incarcerated. You would be free to come back at the time of sentencing, and then sentencing would be—after I listen to you and listen to the attorneys I would have to decide what type of sentence would be appropriate in this case. And so it's my understanding that both counsel want me to make a finding with respect to guilt or innocence based upon the stipulation that's been entered into by both parties? |
| **MR. KOVIS:** | That's correct, Your Honor. |
| **MR. TYLER:** | Yes, Your Honor. |
| **THE COURT:** | Based on that stipulation the Court does find that on or about the 6th day of June, 2012; in the State of Idaho; Gerald K. Umphenour possessed some amount or any amount of methamphetamine; and that Mr. Umphenour either knew it was methamphetamine or believed it was a controlled substance. Based upon those stipulated facts and findings, the Court does find that Mr. Umphenour is guilty of the offense in count one, that is, possession of a controlled substance. |

The foregoing indicates that both the parties and the court understood that a bench trial was being conducted on stipulated facts. Consistent with this, the transcript from the sentencing hearing reveals that the district court reaffirmed that what occurred on May 22, 2013 was indeed a bench trial. There, the court stated: "My recollection is, of course, that there was a stipulation to facts—a waiver of a jury trial and stipulation to facts, not a plea in this case. Based on those stipulated facts the Court found beyond a reasonable doubt that Mr. Umphenour did on the date alleged possess some amount of methamphetamine." Similarly, the introduction to the Judgment of Conviction provided:

9

> The defendant waived a jury trial, stipulated to a court trial, and stipulated that on or about the 6th day of June, 2012, in the State of Idaho he possessed some [a]mount o[f] methamphetamine, and that he knew it was methamphetamine or was a controlled substance. Based upon those stipulated facts the court found beyond a reasonable doubt that the defendant was guilty of Possession of a Controlled Substance (Methamphetamine), a felony, in violation of Idaho Code [section] 37-2732(c)(1).

Based upon the foregoing, I simply cannot join the majority in concluding that what occurred before the district court on May 22, 2013 was a guilty plea rather than a bench trial. Having concluded that the proceeding before the court was a bench trial, I would vacate Umphenour's conviction because the record does not reflect that Umphenour personally waived his right to a jury trial, which, as illustrated below, is required for a valid waiver.

In *State v. Perry*, 150 Idaho 209, 224, 245 P.3d 961, 976 (2010), this Court articulated the test for cases on appeal that involve unobjected-to fundamental error: (1) the defendant must demonstrate that one or more of the defendant's unwaived constitutional rights was violated; (2) the error must be clear or obvious, without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision; and (3) the defendant must demonstrate that the error affected the defendant's substantial rights, meaning (in most instances) that it must have affected the outcome of the trial proceedings. *Id.* Consequently,

> where an error has occurred at trial and was not followed by a contemporaneous objection, such error shall only be reviewed where the defendant demonstrates to an appellate court that one of his unwaived constitutional rights was plainly violated. If the defendant meets this burden then an appellate court shall review the error under the harmless error test, with the defendant bearing the burden of proving there is a reasonable possibility that the error affected the outcome of the trial.

*Id.* Thus, this Court left open the question as to whether an unobjected-to constitutional violation rising to the level of structural error would satisfy the third prong of the fundamental error analysis without a showing of actual effect on the outcome of the trial.

Applying Idaho's fundamental error analysis to the facts of this case, I would hold that Umphenour's conviction should be vacated. First, there was a clear violation of Umphenour's constitutional right to a jury trial. The Sixth Amendment to the United States Constitution and Article I, § 7 of the Idaho Constitution both preserve a criminal defendant's right to trial by jury. Indeed, the Sixth Amendment to the United States Constitution provides: "In all criminal

prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed. . . ." U.S. Const. amend. VI. Unlike the Sixth Amendment, however, Article I, § 7 of the Idaho Constitution also directs *how* that right to a jury trial may be waived. It states:

> The right of trial by jury shall remain inviolate.... A trial by jury may be waived in all criminal cases, by the consent of all parties, expressed in open court, and in civil actions by the consent of the parties, **signified in such manner as may be prescribed by law.**

Idaho Const. art. I, § 7 (emphasis added). There is nothing in the Idaho Constitution that requires a defendant to personally waive his right to a jury. However, a few years after the Idaho Constitution was amended to allow a defendant to waive his right to a jury trial in all criminal cases, the Idaho Supreme Court adopted a criminal rule that sets the standard for waiver of a jury trial in felony cases. Idaho Criminal Rule 23(a) states:

> In felony cases issues of fact must be tried by a jury, unless a trial by jury is waived by a written waiver executed *by the defendant* in open court with the consent of the prosecutor expressed in open court and entered in the minutes.

(emphasis added). Thus, although the Idaho Constitution does not explicitly require a defendant to personally waive the right to a jury trial, this Court has promulgated a Rule requiring such a personal waiver in felony cases. The Constitution contemplates that the manner in which the right to a jury trial is waived may be prescribed by law, which is precisely what Idaho Criminal Rule 23(a) does. Thus, in felony cases, I would hold that a defendant must personally waive the right to a jury trial for that waiver to be constitutionally valid.

Here, there is no evidence in the record to indicate that Umphenour personally waived his right to a jury trial. The record reflects that the trial court confirmed with Umphenour's counsel that the parties were stipulating to certain facts and that they wanted the court to make a finding as to guilt or innocence based on those facts. However, the record does not indicate that Umphenour personally agreed to anything other than the stipulated facts before the court: he did not confirm verbally or in writing that he was waiving his right to a jury trial or that he understood the rights that he was waiving by doing so, and the State has failed to produce any other evidence that would show Umphenour personally waived his right to a jury trial. Although the court minute entries from the arraignment indicate that Umphenour was advised of the rights he would give up upon a guilty plea and that he understood those rights, there is no transcript before this Court from the arraignment. Without a reporter's transcript to establish the record of

11

what took place at the arraignment, it is unclear whether Umphenour was in fact advised of his right to a jury trial or that he understood he would be giving that right up if he were to plead guilty. "Clerk's minutes, of necessity, are summary in nature and do not contain all of the details as to what occurred," and are therefore insufficient to show that Umphenour validly waived his right to a jury trial. *Martinez v. State*, 92 Idaho 148, 149, 438 P.2d 893, 894 (1968). This Court should decline to presume such a waiver from a silent record. *See State v. Swan*, 108 Idaho 963, 965, 703 P.2d 727, 729 (Ct. App. 1985); *Boykin v. Alabama*, 395 U.S. 238 (1969); *Duncan v. Louisiana*, 391 U.S. 145 (1968) (stating that the right to jury trial is a fundamental right and warning that a waiver of that right is not to be presumed from a silent record).

As the Colorado Supreme Court aptly put it, "[i]f a waiver could be implied from a defendant's failure to object to his counsel's statement, there would be an increased danger of misinterpretation with respect to a right considered one of the most important in our democracy." *Rice v. People*, 565 P.2d 940, 941 (Colo. 1977). Thus, "a requirement that the defendant personally waive the right to a trial by jury alleviates the difficult task presented to an appellate court that is seeking to determine the meaning of the defendant's silence." *Id.* Because the record does not show that Umphenour personally waived his right to a jury trial, there was a clear violation of his constitutional right to a trial by jury. Consequently, the first two prongs of the fundamental error analysis have been met. The next issue then, is whether the substantial rights prong has been satisfied.

Umphenour argues that he is not required to prove the third prong of the fundamental error analysis because an invalid waiver of the right to a jury trial is a structural error, which automatically satisfies the third prong without showing the invalid waiver affected his substantial rights. I would agree.

The third element of our fundamental error analysis requires that "the defendant . . . demonstrate that the error affected the defendant's substantial rights, meaning (in most instances) that it must have affected the outcome of the trial proceedings." *Perry*, 150 Idaho at 226, 245 P.3d at 978. This case invokes the "in most instances" language from the foregoing passage. This Court adopted its three-prong fundamental analysis test, including the "in most instances" hedge, from *United States v. Olano*, 507 U.S. 725, 732–35 (1993). There, the U.S. Supreme Court explained that federal courts should use the three-part inquiry to determine whether they should

reverse on grounds of plain error to which no objection was made in the trial court. *Id.* While discussing the third prong of the *Olano* test, the Idaho Supreme Court explained:

> The reason the parenthetical—(in most instances)—was inserted into the third prong above is because the U.S. Supreme Court in *Olano* declined to determine whether unobjected to constitutional violations rising to the level of structural defects will satisfy the 'affect substantial rights' prong without a showing of actual affect on the outcome of the case.
>
> . . . .
>
> The State of Idaho shares the same conflicting interests as the federal government when it comes to review of unobjected to error, and we find that the U.S. Supreme Court struck an appropriate balance between these competing interests in their opinion in *Olano*.

*Perry*, 150 Idaho at 225–26, 245 P.3d at 977–78. Thus, by adopting the U.S. Supreme Court's three-prong test, this Court, like the U.S. Supreme Court, left open the question whether a constitutional violation rising to the level of a structural defect would satisfy the third prong without a showing of actual effect on the outcome of the trial. Thus, there are two issues at play here. First, whether an invalid waiver of the right to a jury trial constitutes structural error, and if so, whether structural errors satisfy the third prong of the fundamental error analysis.

i. An invalid waiver of the right to a jury trial constitutes structural error.

This Court has followed U.S. Supreme Court jurisprudence for purposes of identifying structural defects. In *Arizona v. Fulminante*, 499 U.S. 279 (1991), the U.S. Supreme Court reiterated that some constitutional rights are so basic to a fair trial that the violation of those rights requires an automatic reversal and is not subject to harmless error analysis. Chief Justice Rehnquist, writing for the majority on the issue, noted that constitutional error could essentially be broken down to two different categories: 1) trial errors "which [occur] during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether [their] admission was harmless beyond a reasonable doubt;" and 2) structural defects which affect "the framework within which the trial proceeds, rather than simply an error in the trial process itself" and thus are so inherently unfair that they are not subject to harmless error analysis. *Id.* at 307–308, 310. Explaining why certain constitutional violations amount to structural defects, the U.S. Supreme Court noted that " '[w]ithout these basic protections, a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair.' " *Id.* at 310 (quoting *Rose v. Clark*, 478 U.S. 570, 577–78 (1986)).

13

The U.S. Supreme Court has found that the following errors constitute structural defects: (1) complete denial of counsel (*Gideon v. Wainwright*, 372 U.S. 335 (1963)); (2) biased trial judge (*Tumey v. Ohio*, 273 U.S. 510 (1927)); (3) racial discrimination in the selection of a grand jury (*Vasquez v. Hillery*, 474 U.S. 254 (1986)); (4) denial of self-representation at trial (*McKaskle v. Wiggins*, 465 U.S. 168 (1984)); (5) denial of a public trial (*Waller v. Georgia*, 467 U.S. 39 (1984)); (6) defective reasonable-doubt instruction (*Sullivan v. Louisiana*, 508 U.S. 275 (1993)); and (7) erroneous deprivation of the right to counsel of choice (*U.S. v. Gonzalez–Lopez*, 548 U.S. 140 (2006)). Although there may be other constitutional violations that would so affect the core of the trial process that they require an automatic reversal, as a general rule, most constitutional violations will be subject to harmless error analysis. *Neder v. United States*, 527 U.S. 1, 8 (1999).

An invalid waiver of the right to a jury trial is not included in this list of structural defects. However, neither this Court nor the U.S. Supreme Court has explicitly stated that structural defects are limited to those listed above. In my view, an invalid waiver falls under the same umbrella as a "denial of a public trial" structural defect because by accepting an invalid waiver, the trial court is, in essence, denying the defendant a jury trial. The U.S. Supreme Court has emphasized that the deprivation of the right to a jury trial has consequences that are necessarily unquantifiable and indeterminable, and therefore unquestionably qualifies as "structural error" and defies analysis by harmless-error standards under *Fulminante*. *Sullivan v. Louisiana*, 508 U.S. 275 (1993). Additionally, it is not an error in the trial process, but a defect in the framework within which the trial proceeds, which militates towards classifying the invalid waiver as a structural defect. Finally, although it may not be the case here, in most other circumstances it would be difficult to assess the effect of an invalid waiver of the right to a jury trial on the outcome of a trial.

In any event, although not binding on this Court, the Ninth Circuit has concluded that an invalid waiver of the right to a jury trial constitutes structural error and requires reversal without showing prejudice. *See  United States v. Duarte–Higareda*, 113 F.3d 1000, 1003 (9th Cir.1997) ("[W]e conclude that this error warrants reversal because the district court's failure to ensure the adequacy of [the defendant's] jury waiver affected the basic framework of [the defendant's] trial and we cannot determine whether this effect was harmless."). *See also Miller v. Dormire*, 310

F.3d 600, 604 (8th Cir. 2002) (finding that the defendant's attorney's waiver of a jury trial was structural error requiring automatic reversal of the defendant's conviction).

Additionally, there are several cases from our sister courts that have reversed a defendant's conviction without a showing of actual prejudice where there was an invalid waiver of the right to a jury trial. For example, in *Fortune v. United States*, 59 A.3d 949, 955 (D.C. Ct. App. 2013), the District of Columbia Court of Appeals, after noting the division among appellate courts[3] as to whether denial of the right to a jury trial without proper waiver is structural error, determined that under D.C. law, it was in fact structural error. The court there reasoned:

> While there are strong arguments on both sides of the issue, we are persuaded that the importance of the right to a jury trial, the explicit statutory command in this jurisdiction that trial shall be by jury absent an express waiver by the defendant in open court, and the relative inability of a reviewing court to engage in review of whether the error affected the defendant's rights, all counsel in favor of holding that the failure to make the prescribed determination of waiver is a structural error, one that obviates the need for further inquiry into whether the defendant's substantial rights were affected by the error.

*Id.* at 956–57. The court there concluded that an invalid waiver of the right to a jury trial constitutes structural error requiring automatic reversal without a showing of prejudice. *Id. See also State v. Gore*, 955 A.2d 1, 14 (Conn. 2008) (concluding that an invalid jury trial waiver is structural error that is per se prejudicial and is not subject to harmless error analysis); *State v. Baker*, 170 P.3d 727, 731 (Ariz. Ct. App. 2007) (holding that where the record showed neither that the trial court explained to the defendant his right to a jury trial nor an effective waiver of the right, structural error occurred); *State v. Offing*, 551 P.2d 556 at 557 (Ariz. 1976) (reversing and remanding for new trial because record did not affirmatively show that defendant knew he was giving up jury trial right); *People v. Collins*, 27 P.3d 726, 736 (Cal. 2001) (finding that the trial court's improper inducement of a jury-trial waiver amounted to a structural defect); *People v. Cook*, 776 N.W.2d 164, 168 (Mich. Ct. App. 2009) ("[W]e conclude that a constitutionally

---

[3] The court compared *United States v. Williams*, 559 F.3d 607, 614–15 (7th Cir.2009) (recognizing that "[a]n invalid jury waiver certainly affects the framework of a case in [the] sense that the determination of guilt or innocence will be made by a judge rather than a jury, and [that] it would be a dubious enterprise to try and show that a jury likely would have reached a different result than the judge did;" but nonetheless finding the error non-structural because neither a court's inquiry with the defendant nor a defendant's written waiver of the jury trial right was a constitutional mandate), *with McGurk v. Stenberg*, 163 F.3d 470, 474–75 (8th Cir.1998) (holding that a state court's requirement of showing of actual prejudice from wrongful denial of jury trial right to be erroneous because a denial of the right is a deprivation of similar constitutional dimension to other structural defects held by the Supreme Court to warrant automatic reversal). It should be noted however, that in *Williams*, the defendant had also stated on the record that he wished to waive a jury trial.

invalid jury waiver is a structural error that requires reversal."); *cf., e.g., Balbosa v. State*, 571 S.E.2d 368, 369 (Ga. 2002) ("We are of the opinion that a harmless error analysis cannot be applied to a jury trial waiver."); *State v. Hauk*, 652 N.W.2d 393, 404 n. 9 (Wis. Ct. App. 2002) (refusing to engage in harmless-error analysis where there was no valid jury waiver); *Gyulveszi v. State*, 805 So.2d 84, 85 (Fla. 2d DCA 2002) (concluding that the absence of a jury-trial waiver by the defendant in writing or on the record was structural error requiring reversal).

Considering the important right that is at stake, I would follow our sister courts and hold that invalid jury trial waivers constitute structural error. The question remaining, then, is whether such structural errors satisfy the third prong of the fundamental error analysis without showing actual prejudice.

ii.     <u>Structural errors satisfy the third prong of the fundamental error analysis.</u>

The State argues that the proper prejudice analysis in cases such as this one should not be whether the ultimate outcome of the trial would be different absent the error. Instead, the State contends that the proper prejudice analysis should ask whether there is any evidence that the defendant would not have waived the right to a jury if asked personally by the trial court. This argument must fail because our fundamental error analysis requires a showing that "the error affected the defendant's substantial rights, meaning (in most instances) that it must have affected the outcome of the trial proceedings." *Perry*, 150 Idaho at 226, 245 P.3d at 978. Moreover, the issue here is not the kind of prejudice that must be shown, but rather whether prejudice is even required to be shown. More specifically, whether a structural error in the form of an invalid jury waiver requires an automatic reversal without showing that the defendant's substantial rights were affected.

As discussed above, the effect of an invalid waiver of the right to a jury trial would be difficult to determine, and the consequences are necessarily unquantifiable and indeterminable. Those are the hallmarks of structural defects as described by the U.S. Supreme Court, which makes them "defy analysis by harmless-error standards." *Fulminante*, 499 U.S. at 309–10. Consequently, the authority discussed above concluding that an invalid waiver of a jury trial right constitutes structural error has also held, or at least suggested, that the error is not subject to harmless error analysis, but rather requires automatic reversal without a showing of prejudice. I would agree with the consensus of those courts that have held such invalid jury waivers constitute structural error for which no showing of prejudice is required. Therefore, I would hold

that structural errors in the form of invalid jury waivers satisfy the third prong of our fundamental error analysis.

In sum, I would hold that: (1) the proceeding on May 22, 2013 before the district court below was a bench trial rather than a guilty plea; (2) a defendant must personally waive his right to a jury trial; (3) Umphenour demonstrated a clear violation of his constitutional right to a jury trial because the record does not show he personally waived that right; (4) Umphenour's invalid waiver of his right to a jury trial was structural error; and (5) structural errors satisfy the third prong of our fundamental error analysis. Accordingly, I would vacate Umphenour's conviction.


HORTON, J., dissenting.

Although I am unable to join in the result reached by the Court, I first note that I simply can't figure out what the district court thought it was doing when Umphenour appeared before it on May 22, 2013, and stipulated to having committed the elements of the crime of possession of a controlled substance. Notwithstanding my inability to resolve the threshold question which dictates our standard of review, the trial court's evident disregard for rules designed to protect a defendant's rights, guaranteed by both the state and federal constitutions, is sufficiently egregious as to warrant vacating this conviction.

The record provides significant support for the Court's conclusion that the proceedings of May 22, 2013, were in the nature of a guilty plea rather than a court trial. Certainly, much of the colloquy on that date reads like a traditional guilty plea, albeit without any apparent effort by the district court to comply with many of the requirements of Idaho Criminal Rule 11. Following Umphenour's pro se notice of appeal, the State Appellate Public Defender's Office filed an amended notice of appeal, in which it specifically requested the preparation of a transcript of the "Change of Plea Hearing held on May 22, 2013." Likewise, the index to the subsequently-prepared transcript describes the proceeding as a "change of plea." Of course, as the Court observes, the fact that Umphenour moved to withdraw his plea pursuant to Idaho Criminal Rule 33(c) suggests that he believed he had entered a plea of guilty, as that Rule relates only to withdrawal of a guilty plea. Most significantly to me, the district court's treatment of Umphenour's Idaho Criminal Rule 33(c) motion to withdraw his plea suggests that the district court may have viewed the May 22, 2013, proceedings as a guilty plea. If the district court had viewed the earlier proceedings as a court trial, it surely would have denied the motion on the

17

obvious ground that there was no guilty plea. Instead, on reconsideration, the district court decided the motion on the merits, finding that Umphenour had failed to demonstrate the manifest injustice required to set aside a guilty plea following sentencing.

There is certainly support in the record for Justice Burdick's conclusion that the district court found Umphenour guilty based upon stipulated facts presented by the parties. After all, at the outset of the hearing, the district court stated:

> Counsel indicated before we came in that you had discussed this case further, and that there was a proposal that the parties stipulate to certain facts, and that the Court make findings based upon those facts. Is that generally what counsel wanted to do?

After receiving the stipulated facts from the parties, the following exchange took place:

> THE COURT: And so it's my understanding that both counsel want me to make a finding with respect to guilt or innocence based upon the stipulation that's been entered into by both parties?
> [DEFENSE COUNSEL]: That's correct, Your Honor.
> [PROSECUTOR]: Yes, Your Honor.
> THE COURT: Based on that stipulation the Court does find that on or about the 6th day of June, 2012; in the State of Idaho; Gerald K. Umphenour possessed some amount or any amount of methamphetamine; and that Mr. Umphenour either knew it was methamphetamine or believed it was a controlled substance. Based upon those stipulated facts and findings, the Court does find that Mr. Umphenour is guilty of the offense in count one, that is, possession of a controlled substance.

Consistent with these statements, the introduction to the Judgment of Conviction entered by the district court described the course of proceedings as follows:

> The defendant waived a jury trial, stipulated to a court trial, and stipulated that on or about the 6th day of June, 2012, in the State of Idaho he possessed some mount [sic] o [sic] methamphetamine, and that he knew it was methamphetamine or was a controlled substance. Based upon those stipulated facts the court found beyond a reasonable doubt that the defendant was guilty of Possession of a Controlled Substance (Methamphetamine), a felony, in violation of Idaho Code [section] 37-2732(c)(1).

Umphenour's counsel on appeal was evidently unable to determine how to characterize this highly unusual proceeding, as his opening brief asserted that Umphenour was deprived of his right to a jury trial "when the district court held a court trial in the absence of any waiver of that right by Mr. Umphenour" or alternatively, that if the proceedings were actually a guilty plea, "that the district court abused its discretion when it denied an Idaho Criminal Rule 33(c) motion to withdraw plea on its mistaken belief that it lacked the jurisdiction to grant the motion."

18

Counsel for the State was not so equivocal, arguing that Umphenour is estopped from challenging "the unorthodox trial procedure he requested below" and that there was no fundamental error in the procedure. Likewise, in response to the alternative theory advanced by Umphenour's attorney, the State's first line of defense was that there was no abuse of discretion when the district court denied Umphenour's Rule 33(c), I.C.R., motion to withdraw his guilty plea "because there was no guilty plea to withdraw."

In ordinary circumstances, I would feel that the character of the proceedings would dictate the standard of review which, in turn, would dictate whether we affirm or vacate the judgment. This is because I agree with the Court's holding that this Court is permitted to draw reasonable inferences as to whether a defendant has waived the right to a jury trial when reviewing a guilty plea. Likewise, I agree with Justice Burdick's view that a defendant must personally waive the right to a jury trial before a court trial may be held.

My difficulty is this: If the proceedings of May 22, 2013, are viewed as a guilty plea, setting aside the question whether the record reveals that Umphenour knew he was surrendering his right to a jury trial, the barrenness of the record does not allow me to conclude that Umphenour's guilty plea satisfied other constitutional requirements. This constitutes manifest injustice permitting withdrawal of the plea. *State v. Heredia*, 144 Idaho 95, 97, 156 P.3d 1193, 1195 (2007) (citing *State v. Huffman*, 137 Idaho 886, 887, 55 P.3d 879, 880 (Ct.App.2002)).

The seminal case in Idaho regarding this subject is *State v. Colyer*, 98 Idaho 32, 557 P.2d 626 (1976), cited by the Court. There, this Court considered the impact of the decision in *Boykin v. Alabama*, 395 U.S. 238 (1969), cited by the Court:

> Whether a plea is voluntary and understood entails inquiry into three areas: (1) whether the defendant's plea was voluntary in the sense that he understood the nature of the charges and was not coerced; (2) whether the defendant knowingly and intelligently waived his rights to a jury trial, to confront his accusers, and to refrain from incriminating himself; and (3) whether the defendant understood the consequences of pleading guilty. It is clear that the voluntariness of a guilty plea can be determined by considering all of the relevant surrounding circumstances contained in the record. *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *Schneckloth v. Bustamonte*, 412 U.S. 218, 238 n. 25, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The troublesome question is the type of record necessary to show the defendant waived the three above-enumerated rights and understood the consequences of pleading guilty.
> As we have already pointed out, *Boykin* was decided in the context of a totally silent record. The Supreme Court did not expressly rule upon anything but

19

the sufficiency of a barren record. Some courts, led by the California Supreme Court in *In re Tahl*, 1 Cal.3d 122, 81 Cal.Rptr. 577, 460 P.2d 449 (196), have concluded that *Boykin* requires a specific on-the-record waiver of each of the three constitutional rights. We are unable to accede to that interpretation.

We believe that *Boykin* only requires that the record affirmatively show that the plea was understood and voluntary. Although the record must show that the defendant waived his constitutional rights and understood the consequences of pleading guilty, we think it is sufficient if such waiver or understanding can be fairly inferred from the record as a whole. We base our decision upon an examination of *Boykin* and cases decided shortly before and after it.

*Colyer*, 98 Idaho at 34, 557 P.2d at 628. Given Umphenour's focus on the validity of the waiver of his right to a jury trial, I understand the basis for the Court's view that the record is sufficient to conclude that Umphenour knew he was surrendering his right to a jury trial on May 22, 2013. Since *Colyer* was decided, this Court has consistently adhered to the view that the validity of a guilty plea can be determined by considering all the relevant surrounding circumstances shown by the record. *See State v. Carrasco*, 117 Idaho 295, 298, 787 P.2d 281, 284 (1990); *State v. Hawkins*, 117 Idaho 285, 288, 787 P.2d 271, 274 (1990); *State v. Coutts*, 101 Idaho 110, 111, 609 P.2d 642, 643 (1980).

However, considering all of the *Colyer* factors relating to the voluntariness of a guilty plea, the record shows that on May 22, 2013, the district court made absolutely no effort to: (1) ascertain whether Umphenour's stipulation to the elements of the felony offense was the product of any form of coercion; (2) determine if Umphenour understood that he was surrendering his right to a jury trial; (3) determine if Umphenour understood that he was waiving his right to confront his accusers; (4) determine whether Umphenour understood that he was not required to incriminate himself, much less seek a waiver of that right; and (5) inquire whether Umphenour understood the consequences of being found guilty of possessing methamphetamine.

Idaho Criminal Rule 11 sets forth the procedures governing guilty pleas. Although this Court has stated that the "rule 'has not been held to be constitutionally mandated in order to fulfill the requirement of a voluntary, knowing, and intelligent plea,' " *State v. Flowers*, 150 Idaho 568, 573, 249 P.3d 367, 372 (2011) (quoting *State v. Heredia*, 144 Idaho 95, 98, 156 P.3d 1193, 1196 (2007)), even a cursory review of the rule reveals that its purpose is to ensure that guilty pleas satisfy constitutional requirements. The rule provides, in pertinent part:

20

(c) Acceptance of plea of guilty. Before a plea of guilty is accepted, the record of the entire proceedings, including reasonable inferences drawn therefrom, must show:

> (1) The voluntariness of the plea.
>
> (2) The defendant was informed of the consequences of the plea, including minimum and maximum punishments, and other direct consequences which may apply.
>
> (3) The defendant was advised that by pleading guilty the defendant would waive the right against compulsory self-incrimination, the right to trial by jury, and the right to confront witnesses against the defendant.
>
> (4) The defendant was informed of the nature of the charge against the defendant.
>
> (5) Whether any promises have been made to the defendant, or whether the plea is a result of any plea bargaining agreement, and if so, the nature of the agreement and that the defendant was informed that the court is not bound by any promises or recommendation from either party as to punishment.

(d) Other advisories upon acceptance of plea. The district judge shall, prior to entry of a guilty plea or the making of factual admissions during a plea colloquy, instruct on the following:

> (1) The court shall inform all defendants that if the defendant is not a citizen of the United States, the entry of a plea or making of factual admissions could have consequences of deportation or removal, inability to obtain legal status in the United States, or denial of an application for United States citizenship.
>
> (2) If the defendant is pleading guilty to any offense requiring registration on the sex offender registry, the court shall inform the defendant of such registration requirements.[4]

Of course, in addition to the shortcomings that I have already mentioned, there is no indication that the district court complied with the requirements of subsection (d)(1), nor did the district court advise Umphenour of the mandatory minimum 100 hours of community service he would be required to perform if placed on probation, I.C. § 37-2738(5), as required by subsection (c)(2).

---

[4] This Court's adoption of subsection (d)(1) evidently anticipated the decision in *Padilla v. Kentucky*, 559 U.S. 356 (2010), which requires defense counsel to advise defendants of the immigration consequences of a guilty plea. This Court has held that the trial court's failure to comply with the requirements of subsection (d)(2) does not rise to the level of manifest injustice requiring a district court to permit withdrawal of a guilty plea following sentencing. *State v. Flowers*, 150 Idaho 568, 573, 249 P.3d 367, 372 (2011).

The only indication in the record that the district court ever advised Umphenour of the consequence of a guilty plea are the minutes from his arraignment on September 11, 2012, more than eight months prior to the proceeding on May 22, 2013. The minutes reflect that at 1:13 p.m. the district court advised Umphenour of "the rights he will give up upon a guilty plea" and one minute later Umphenour "advises he understands the rights he will give up upon a plea of guilty." Given the district court's evident disregard for the requirements of Rule 11, I.C.R., I have absolutely no confidence that the district court addressed all of the constitutional rights that Umphenour would "give up upon a guilty plea." Thus, even if the proceeding is properly characterized as a guilty plea, the district court's failure to perform its basic duties when taking a guilty plea lead me to the conclusion the *Colyer* Court reached: Due to the silence of the record, the "guilty plea must be therefore set aside, and he must be allowed to plead anew." *Colyer*, 98 Idaho at 36, 557 P.2d at 630.

I realize that my decision in this case has taken into account matters not raised by the parties. However, due to the abject failure of the district court to attempt to perform its duties when taking a guilty plea or obtain a waiver of Umphenour's right to a jury trial before conducting a court trial, it ultimately matters not to me whether the proceedings of May 22, 2013, are characterized as a court trial or guilty plea. Therefore, I respectfully dissent.